# BALTIMORE DRY DOCKS AND SHIPBUILDING COMPANY ET AL.

*vs.*

# EVA WEBSTER.

*Workmen's Compensation Act—Injury Arising Out of Employment—Fall Resulting from Vertigo.*

One claiming compensation for an employee's death must show that the death resulted from an injury sustained in the course of the employment, which arose out of the employment.

p. 620

The meaning and effect of the words "arising out of and in the course of employment" must be largely determined by considering them in connection with the facts of each particular case.

p. 626

On an issue as to compensation for the death of an employee occurring as the result of a fall from the deck of a vessel in course of construction, where he was at work, a prayer that the verdict should be for the defendants in case the death resulted from a fall occasioned by a vertigo or epileptic fit was properly refused, it in effect directing a verdict for defendants if the alleged physical disability merely contributed to the fall, and was not the sole cause thereof, and there being evidence tending to show that the accident was due to other causes.

pp. 627-629

For similar reasons, the lower court, sitting without a jury, acted properly in refusing to answer, as being immaterial, a question whether the employee's death was due to a fall occasioned by a vertigo or epileptic fit.

pp. 627-629

*Decided January 10th, 1922.*

Appeal from the Superior Court of Baltimore City (GORTER, J.).

Claim by Eva Webster, as widow, under the Workmen's Compensation Act, on account of the death of Victor Webster,

against the Baltimore Dry Docks and Shipbuilding Company, employer, and the United States Fidelity and Guaranty Company, insurer. From a judgment affirming a decision of the Industrial Accident Commission in favor of the claimant, said employer and insurer appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Robert D. Bartlett,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellants.

The deceased did not die from an injury received in the course of and growing out of his employment.

*Brooker* v. *Industrial Accident Commission,* 176 Cal. 275; *Van Gorder* v. *Packard Motor Car Co.,* 195 Mich. 588; *Collins* v. *Brooklyn, etc., Co.,* 156 N. Y. Supp. 957; *McCoy* v. *Michigan Screw Co.,* 180 Mich. 454; *Klawinski* v. *Lake Shore, etc., Co.,* 185 Mich. 643; *Hawkins* v. *Powell's, etc., Co.,* L. R. (1911), 1 K. B. Div. 988, 4 B. W. C. C. 178; *Barnabas* v. *Bersham Colliery Co.,* 4 B. W. C. C. 119; *Morris & Co.* v. *Industrial Accident Commission* (Ill.), 128 N. E. 727; *Gale* v. *Munroe,* 184 N. Y. Supp. 413; *Reeves* v. *John Dady Corp.* (Conn.), 113 At. 162; *Cox* v. *Kansas City Refining Co.* (Kan.), 195 Pac. 863; *Joseph* v. *United Kimono Co.,* 185 N. Y. 700.

*Joshua W. Miles* and *Southey F. Miles,* for the appellee.

The death resulted from decedent's work or employment, even conceding that he had an attack of vertigo, or epilepsy.

*Wicks* v. *Dowell* (1905), 2 K. B. 225; *Madden's Case,* 222 Mass. 484; *Carroll* v. *What Cheer Stable Co.,* 38 R. I. 421; *Terminal Company* v. *Industrial Board,* 279 Ill. 352; *Santacroce* v. *Sag Harbor Brick Co.,* 169 N. Y. Supp. 695; *Driscoll* v. *Cushman's Express Co.,* Mass. W. C. C., case 737.

Pattison, J., delivered the opinion of the Court.

This appeal was taken by the Baltimore Dry Docks and Shipbuilding Company, employer, and The United States Fidelity and Guaranty Company, insurer, from an order of the Superior Court of Baltimore City affirming an order of The State Industrial Accident Commission allowing compensation to the claimant, Eva Webster, for the death of her husband, Victor Webster.

Victor Webster, the deceased, was, on the 20th day of April, 1920, employed by the Baltimore Dry Docks and Shipbuilding Company as a carpenter upon a vessel then in course of construction by said company. About 9 o'clock in the morning of that day, Webster went from one of the lower decks of the vessel through the cabin to and upon the upper or top deck, carrying with him the tools with which he worked, consisting of brace and bit, saw, and ax. It was while there that he fell from said deck to the ground below, causing a compound fracture of the left side of the skull extending to the base of the brain, from which injury he died on the same day.

The employer, in its report to the State Industrial Accident Commission, which under the statute it was required to make, in describing how and in what manner the accident occurred, stated that the deceased,

"while rising up from laying down tools stepped on a rivet, which caused the patient to fall backwards off the ship, falling a distance of 45 feet, striking his head on the step below."

Upon being notified by the commission that Eva Webster had filed with it her claim for compensation for the death of her husband, the insurer, the United States Fidelity and Guaranty Company, asked that it be given a hearing upon the claim for compensation so made by the wife, upon the following grounds: 1. That injury did not arise out of, or occur while in the course of employment. 2. That the death was not the result of an accident. 3. To determine the extent

of dependency, and upon such other further grounds, both legal and equitable, as may appear at the hearing.

The hearing was had as requested, at which evidence was adduced both in support of and against the claim so made, and at the conclusion of the hearing the commission announced its findings, which were:

"That Victor Webster was injured on the 20th day of April, 1920, while in the employ of the Baltimore Dry Docks and Shipbuilding Company; that as a result thereof he died on the same day; that said injury and death arose out of and in the course of his employment; that his average weekly wage was $35.00; that he left surviving him his widow, Eva Webster, who was wholly dependent upon him for support at the time of his injury and death, and is therefore entitled to an award of $17.50 per week, not to exceed $4,250 in the aggregate, said payments to begin as of April 20th, 1920, or until further order of this commission."

On September 22nd, 1920, an order in conformity with said findings was passed by said commission, directing that said compensation so allowed be paid to the claimant by the Baltimore Dry Docks and Shipbuilding Company, employer, and the United States Fidelity and Guaranty Company, insurer, from which an appeal was taken by the said employer and insurer to the Superior Court of Baltimore City.

The case was submitted to JUDGE GORTER, sitting without a jury, upon the record transmitted from the Industrial Accident Commission to said court. The appellants asked two questions of the court, and submitted to it one prayer. By the first of these questions the court was asked, "Was the death of Victor Webster on the 20th day of April, 1920, due to a fall occasioned by a vertigo or epileptic fit?" The court declined to answer this question, because, as it stated, its determination was not material to the decision of the case. The court was asked by the second question, "Was the death of Victor Webster on the 20th day of April, 1920, occa-

sioned by an injury received in the course of and growing out of his employment?" To this question the court answered "yes."

By the appellants' prayer the court was asked "To declare the law that if it finds, sitting as a jury, from the evidence, that Victor Webster met his death on April 20th, 1920, as the result of a fall occasioned by a vertigo or epileptic fit, that then the verdict must be for the defendant, notwithstanding that the court further found the fact that he was engaged in work at the time growing out of and in the course of his employment." This prayer was refused by the court.

The only exception found in the record is to the rulings of the court in refusing the appellants' prayer and in refusing to answer the appellants' first question.

If we understand correctly the position of the appellants, they concede that the decedent, at the time of his death, was engaged in an extra hazardous occupation, and that his death resulted from an accidental personal injury sustained by him in the course of his employment; but they deny that his death resulted from an injury arising out of his employment.

To entitle the claimant to compensation it was not only necessary that it be shown that death resulted from an injury sustained by the employee in the course of his employment, but also that his death resulted from injuries arising out of his employment.

It will be seen from the court's answer to the second question that he found that the death of the employee resulted from the injury sustained by him arising out of his employment, as well as in the course of his employment.

It is contended by the appellants that the employee's death did not result from an injury sustained by him arising out of his employment, but from an injury resulting from a fall from the deck of the vessel, caused by a fit or an attack of vertigo, with which he was at the time seized.

It was upon the theory of that contention that the appellants' first question and prayer were submitted to the court.

There was some evidence produced at the hearing before the commission to the effect that the decedent was for some years prior to the accident subject to attacks of vertigo or dizziness. Dr. Stem, physician for both the employer and insurer, testified that on three different occasions, covering the period between August 1st, 1918, to June 1st, 1919, Webster was brought to the hospital of the Maryland Ship Building Company, where the witness was then employed, suffering on each occasion with an attack of vertigo or dizziness, and on one of these occasions he was partly unconscious; that Webster admitted to him that he had been suffering with vertigo or dizziness for ten or twelve years. It appears from the record that the employer's report to the commission stating how death occurred was made out by this witness, who at the time was in some way associated with Dr. Carroll, whose name appears to said report which is found in the record. This report stated that the accident occurred "while rising up from laying down tools (Webster) stepped on rivet, which caused patient to fall backwards off the ship." This report Dr. Stem said was made from information obtained from A. F. Johnson and John Kidd, who reported to him how the accident occurred. They both told him that they saw Webster stooping down to his tools when he fell.

John Kidd, when before the commission, testified that he came through the companionway upon the poop deck, just as Webster was falling from that deck. He saw him fall, but could not say how he fell; that there was someone with him at the time, but could not say who it was; it may have been Johnson.

The deposition of Johnson was taken in New York City, before a notary public, at the instance of the employer and insurer; the counsel for the respective parties being present. He testified that he was waiting for someone who was to be sent by his foreman to assist him in the work that he was to do; that while there, sitting upon a pile of lumber between the cabin and hatchway, Webster came up from the cabin bringing with him a brace and bit, saw and hatchet; that

Webster spoke to him and then engaged in conversation with him, that for a few minutes Webster stood in front of him before taking his seat upon the lumber beside him, that when he did so he placed his tools upon the deck before him. Webster's home was in Somerset County; he had left his family, and had come to Baltimore, where he was temporarily engaged at work, and where he boarded in the same house with Johnson. It was in this way that he became acquainted with him. Johnson had been at work with the Baltimore Dry Docks and Shipbuilding Company for only one or two days before the happening of the accident; and when Webster saw Johnson upon the deck, on the occasion referred to, he engaged in conversation with him, first as to matters in connection with their association at their boarding house, and next in relation to Johnson's work upon the vessel, asking him among other things how he liked his job. After sitting there with Johnson upon the pile of lumber for a little while, Webster got up from where he was sitting and picked up his tools, as witness said, still continuing his conversation with him, which at that time was in relation to a change of work for witness, and while so talking Webster started backward, a peculiar expression came over his face, he looked to him like he was in a trance, he put one of his hands to his face, and continued to go back until he went over the side or stern of the vessel, which was protected by a gunnel only a few inches high. The witness, however, testified that there was upon the deck floor, where Webster was standing, a number of rivets two or more inches long and seven-eights of an inch in diameter; and he admitted that he had said to Dr. Stem and others upon the day of the accident that Webster stumbled and fell over the rivets. He persisted in saying, however, that what he said to Dr. Stem and others was not true, and when asked why he said that Webster had stumbled over the rivets, causing the fall, he said he did not know; it just came into his mind, had no reason whatever, that he "did not take it seriously then," but he finally said that "a bolt (rivet) flew in the air, but God knows the bolt could not have

thrown him that far. The bolt (rivet) was ten feet away from where he fell," thus indicating that the bolt or rivet was thrown in the air by the movement of Webster, but in his opinion the fall could not have been caused thereby, because of the distance of the bolt from the side or stern of the vessel.

Other witnesses testified that they were told by Johnson on the day of the accident that Webster stumbled over the rivet, and others who had known Webster for years, and who worked with him, not only in the city, but in the country before he came to the city, testified that they had not before heard of Webster's being subject to dizziness or vertigo.

The decisions of the courts of this country, as well as those of England, are in conflict upon the question of the liability of the employer, or insurer, in this class of cases.

The case upon which the appellants seem most to rely is that of *Brooker* v. *Industrial Accident Commission* (176 Cal. 275), decided by the Supreme Court of California in 1917, and found in *L. R. A.* 1918 F. 878. In that case the decedent was employed as a laborer in the erection of a building, and at the time of the accident was working upon a scaffold five feet in width and thirty-nine feet above the ground. The scaffold was guarded by a rope three feet high along its upper edge. While so engaged, the decedent fell to the surface of the scaffold, rolled off the edge and fell to the ground, and death resulted therefrom. There was evidence in the case showing that he was subject to epileptic fits, and that he was seized with one of these fits while so at work on the scaffold, in consequence of which he fell upon the scaffold, and, as a result of contortions incident to the fit, he rolled off the edge and was thrown to the ground. There was no evidence to the contrary. In fact it was conceded that the sole cause of the fall was a fit of epilepsy. The commission allowed compensation, but upon appeal it was held that the commission was wrong in its decision.

The court in that case said: "There was nothing in the nature of the work which the deceased was doing at the time that had any tendency to bring on a fit of epilepsy. Neither the fit, nor the fall, nor the injury, was produced by the nature of the work in which he was engaged. The injury was doubtless the greater by reason of the distance from the scaffold to the ground, but this distance was not due to the nature of the work itself. The question whether or not such an injury arises 'out of' the employment cannot and does not depend upon the height from which the employee falls or the extent of the injury he receives as the result of the fit."

The court cited with approval the case of *Van Gorder* v. *Packard Motor Car Company,* 195 Michigan, 588, L. R. A. 1917 E. 522. In the *Van Gorder Case* the employee, while at work on a scaffold six feet in height, was seized with an epileptic fit, which caused him to fall off the scaffold to the floor, whereby his skull was fractured and his death ensued. The court, after an elaborate review of the authorities, said: "There is no claim that the scaffold was improperly constructed, or in anyway unsuitable for the service. Due to no conditions arising out of his employment, but solely to his predisposition to epilepsy, of which his employer had no notice, he fell from the scaffold, receiving an injury from which death resulted. The fall was caused, and caused *only,* by the epileptic fit. The fit was the direct, and *only,* cause of his injury. We do not think it would be seriously contended that had he fallen in an epileptic fit while standing on the floor and received the injury he did, the injury arose out of the employment, and that the defendant was liable. The height from which he fell, here only a short distance, could not change the liability for the injury. The most that can be said is that the height from which the deceased fell may have aggravated the extent of the injury, but it does not change the question of responsibility or liability."

Among the cases holding adversely to the contention of the appellants are *Wicks* v. *Dowell* in the English Court of Ap-

peals, (1905) 2 K. B. 225, 2 Annot. Cases, 732, and *Carroll*
v. *What Cheer Stables Company,* 38 R. I. 421.

In *Wicks* v. *Dowell,* the employee was engaged in unload-
ing coal by means of a hydraulic crane from a ship lying at
the wharf.   While at work he was required to stand on a
wooden stage close to the edge of a hatchway, the stage being
so constructed as to enable him to look down into the hold of
the vessel, and while standing on the stage he had to regulate
the descent of the bucket into and its ascent out of the hold
by means of a long pole, and also to give the necessary signals
to the man who was working the crane.   While thus engaged,
he was seized with an epileptic fit, and fell through the hatch-
way into the hold, and sustained very serious injuries.   He
had had an epileptic fit on three previous occasions.   In that
case the court said: "How does it come about in the present
case that the accident arose out of the employment? because
by the conditions of his employment the workman was bound
to stand on the edge of what I may style a precipice, and if
in that position he was seized with a fit, he would almost nec-
essarily fall over.   If that is so, the accident was caused by his
necessary proximity to the precipice, for the fall was brought
about by the necessity for his standing in that position.   Upon
the authorities, I think the case is clear; an accident does
not cease to be such, because its remote cause was the idio-
pathic condition of the injured man; we must dissociate that
idiopathic condition from the other facts and remember that
he was obliged to run the risk by the very nature of his em-
ployment, and that the dangerous fall was brought about by
the conditions of that employment, I think, therefore, that
the present case comes within the purview of the Workmen's
Compensation Act."

In the case of *Carroll* v. *What Cheer Stables Company,*
*supra,* the employee, who was a hack-driver in the employ-
ment of the stable company, which had elected to become sub-
ject to the Workmen's Compensation Act, was pitched from
his seat by the motion of the hack while driving, and while

helpless from dizziness or unconsciousness, occasioned by a disease from which he was suffering. There it was held that he was entitled to compensation for the result of the injury sustained by him, since his fall was an accident arising out of his employment within the meaning of the act.

In that case JUDGE PARKHURST, who delivered the opinion of the court, quotes with approval from *Wicks* v. *Dowell,* and cites a number of other cases in support of his holding, that the death of the employee resulted from injury sustained by him arising out of his employment.

The conflict in the expressions of the decided cases has been very frequently commented upon by the courts of this country and of England. It was said by LORD WRENBURY, in *Herbert* v. *Fox Company* (House of Lords) 1916 D, Annot. Cases, 583, that no recent act has provoked a larger amount of litigation than the Workmen's Compensation Act. The few and seemingly simple words 'arising out of and in the course of the employment' have been the fruitful (or fruitless) source of a mass of decisions turning upon nice distinctions and supported by refinement so subtle as to leave the minds of the reader in a maze of confusion." And "I prefer to go back to the words of the statute, and guided by certain broad principles, which must be taken to be established, to seek to apply those words to the particular case before me." And LORD CHANCELLOR HALDANE expressed the same opinion in *Board of Management of Trim School* v. *Kelly* (House of Lords), 35 Annot. Cases, 104.

After a very careful examination of many of the cases in which the words "arising out of and in the course of the employment" have been construed and passed upon, we may add to what has been said that they, as precedents, furnish little aid or assistance in determining the meaning and effects of those words as used in the statute. And after all that has been said, we too are of the opinion that their meaning and effect must be largely determined by considering them in connection with the facts of each particular case.

In this case we are not called upon to determine the meaning and effect of said words of the statute where the death or injury sustained resulted from an accident caused *solely* by the physical disability of the employee, for such question is not raised by this appeal.

The exception, as we have said, is to the rulings of the court upon its refusal to grant the prayer of the appellants and to answer their first question.

The court was, by the defendants' prayer, asked to declare the law to be that if it, sitting as a jury, should find from the evidence that Victor Webster met his death on April 20th, 1920, as the result of a fall occasioned by a vertigo or an epileptic fit, that then the verdict must be for the defendant, etc.

We have found no case in which the claimant has been refused compensation when the accident resulting in the injury or death of the employee was not caused *solely* by the physical disability of the employee, or where it contributed only to the accident. This principle is fully recognized in the Brooker case, as well as in the other cases therein cited. The court in that case said: "A distinction is to be made between cases of this character, and those where the accident, though partly caused by the idiopathic condition of the employee, is due in part also to the over-exertion of the employee in performing his work, or to the nature of the work, or the appliances furnished to him with which to work, or to the lack of proper safeguards against the ordinary dangers of the place of the work, the injury being sometimes greater because of his idiopathic condition. In those cases the injury is held to arise out of the employment"; and the court in that case, in distinguishing it from *Carroll* v. *What Cheer Stables Company* said: "The fall was probably caused in part by a faint or dizziness, induced by a disease from which he was suffering. But there was evidence that his horses were in a kind of gallop, and that he was pitched out by the motion, and the

court said that the 'fall was more than the mere inert fall or collapse of an unconscious man.'"

The prayer of the appellants does not ask that a verdict be rendered for the defendants should the court find that Webster met his death as a result of a fall caused *solely* by vertigo or an epileptic fit, but in effect their prayer asks that a verdict be rendered for the defendants if it be found that the vertigo or epileptic fit contributed to the fall that resulted in the death of the employee.

Prayers similar to the one in this case were offered in the case of *American Ice Company* v. *Fitzhugh,* 128 Md. 391. The defendant's second prayer in that case asked for the instruction that if the jury found that Seymour Fitzhugh was intoxicated while on duty, and that his death directly resulted from such intoxication, then their verdict should be for the appellant; and by its third prayer it asked that if they found he was intoxicated at the time of the accident and that his death resulted directly from such intoxication, and if the jury believed from the evidence that the accident would not have happened if the deceased had not been intoxicated, then their verdict should be for the appellant.

JUDGE THOMAS, who delivered the opinion of the Court, said: "These prayers ignore the provisions of the act which disentitled the employee to recover only where intoxication is the *sole* cause which results in death. The prayers properly present the defense of contributory negligence applicable to ordinary cases of negligence, but the act in question was designed to abolish the defense of contributory negligence in cases falling within its provisions, and it is only when intoxication is the *sole* cause, and not the contributing cause of the injury that it can be relied on as a defense to the claim of the employee, or his dependents."

The prayers in that case, as this Court held, did not, by the language used, ask for an instruction directing a verdict for the defendant or appellant if it were found that the death of the employee resulted *solely* from intoxication, but the effect of such language was that a verdict should be rendered

Opinion of the Court.

for the defendant if it were found that the intoxication of
the employee contributed to the injury. And so it is with the
prayer in this case, the language of the prayers being prac-
tically the same; it in effect asked that a verdict be rendered
for the defendants if the court should find that the alleged
physical disability of the employee merely contributed to the
accident from which his injury and death resulted.

What we have said of the prayer likewise applies to the first
question asked the court, and the learned judge was right in
declining to answer it, for the reason stated by him.

In the case before us, unlike the *Brooker Case* and the
*Van Gorder Case,* it was not conceded that the alleged phy-
sical disability was the sole cause of the accident from which
death resulted, but such claim was vigorously disputed, and
evidence was offered in the case tending to show that the acci-
dent was due to other causes, and it was for the court, sitting
as a jury, to pass upon the credibility of that evidence. *Grant*
v. *Kotwall,* 133 Md. 573.

As we find no errors in the court's rulings, the judgment
appealed from will be affirmed.

*Judgment affirmed, with costs.*