VICTOR P. NOYES ET AL. *v.* WILLIAM LIDDLE
[No. 65, April Term, 1934.]

*Decided June 14th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William R. Semans,* with whom were *Jenifer & Jenifer* and *Barton, Wilmer, Ambler & Barton,* on the brief, for the appellants.

*James P. Kelley* and *John Grason Turnbull,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

The appellee, employed by Victor P. Noyes, one of the appellants, to gallop horses and work in the stable, while engaged in "haying" and preparing to feed the horses on Saturday afternoon, May 20th, 1933, noticed that a windstorm had come up and a thunderstorm was approach-

ing. Realizing that in the event of a storm it always "blows" in the front stable, he went there for the purpose of shutting the doors of that stable.

Claimant testified: "I went to shut these doors, I felt something go in my eye and I didn't pay much attention to it—I wiped my face and I didn't feel it for awhile, and Sunday I didn't feel anything and Monday morning when I got up about 5 o'clock my eye was hurting me awful bad, and * * * I asked Mr. Gibbs (an employee on the place) if he could see something in my eye and he seen something in my eye and took it out, and it was a little black pebble." "Q. Did you feel anything strike your eye when you closed the door?" "Ans. Yes. * * * Just like you walk along and something strikes you in the eye."

Gibbs testified that on Monday morning Liddle came along with his eye tied up "and I asked him what was the matter, and he said something was in it, and I took and turned the lid and saw something in it and took the handkerchief and wiped it off * * * he said he got it sometime Saturday evening when he was shutting the doors up."

The Industrial Accident Commission found that the claimant was temporarily totally incapacitated as a result of said injuries, and awarded him compensation at the rate of $12.31 per week payable by the employer and insurer during the continuance of his disability, subject to further consideration "when the extent of permanent disability can be determined." There was a subsequent hearing on the petition of the insurer to reopen the case to determine whether or not the claimant's injury arose out of and in the course of his employment. That was the only issue. The commission found for the claimant on the issue raised, and affirmed its previous order. An appeal was entered from this order by the employer and insurer. Later, a hearing was requested "(1) To determine the date upon which temporary total disability ceased; (2) To determine whether or not the claimant is entitled to permanent partial disability." On this hearing the commission ordered that payments

of compensation for temporary total disability cease as of August 1st, 1933, and that the employer and insurer pay compensation at the rate of $12.31 per week for one hundred weeks for permanent partial disability occasioned by total industrial loss of vision of the left eye. There was also an appeal from this order. By agreement the two appeals were consolidated and the case was tried on the following issue: "Did the alleged injury suffered by claimant, William Liddle, on May 20, 1933, arise out of and in the course of his employment?"

So that is the sole question involved in this appeal, and the only contention of appellants is that there was no legally sufficient evidence in the case to show that appellee suffered an accidental injury on May 20th, 1933, arising out of and in the course of his employment. And the only exception reserved was to the refusal of the trial court to grant the employer's and insurer's demurrer prayer on that issue. It is not denied by appellants that the injury was accidental or that it occurred in the course of the employment, but it is strenuously argued that it did not arise "out of the employment," and that is the only question argued by appellants. As was said in *Baltimore Dry Docks & Shipbuilding Co. v. Webster*, 139 Md. 616, 626, 116 A. 842, 846, the cases in which "the words 'arising out of and in the course of the employment' have been construed * * * as precedents, furnish little aid or assistance in determining the meaning and effects of those words as used in the statute. And after all that has been said, we too are of the opinion that their meaning and effect must be largely determined by considering them in connection with the facts of each particular case."

Here we have a man who was exposed to the danger from which the accident resulted by reason of his employment. It was his duty to close the doors, and in doing so he was exposed to the strong draft which was caused by the storm. The injury to his eye was caused either by something being blown into his eye by the strong wind, or by some particle falling in his eye from the door as he shut it. In either case it was an accident happening

in the course of his employment, and that particular accident happened because he was thus employed. It is no answer to say that a like accident might have happened to him if he had been anywhere in that neighborhood. It could as well be said that where a man is injured by stumbling over a log in a factory, it is not an accident growing out of the employment, because any one anywhere in the neighborhood was liable to fall over a log or some like obstacle. The point is that this accident happened while the claimant was in performance of a duty incident to his employment, and the injury can be fairly traced to the employment as a contributing proximate cause; and it cannot be said as a matter of law that at that time the workman would have been equally exposed apart from his employment. People do not ordinarily expose themselves to such dangers except in the performance of some duty. There was evidence from which it was possible to find a causal connection between the conditions under which the work at the moment had to be done and the resulting injury. *Schemmel v. T. B. Gatch & Sons Contracting & Bldg. Co.*, 164 Md. 671, 683, 166 A. 39.

In *Harrison v. Central Construction Co.*, 135 Md. 170, 108 A. 874, the claimant was injured while attempting to get on a train of the Pennsylvania Railroad Company on his way to his place of employment. The causative danger was in no way peculiar to his employment. The accident might have happened to him without regard to the nature of his employment, or it might have happened to any of his fellow passengers. Going to his work by means of the train was a privilege and not a requirement. He could have used any other means of transportation, or he could have lived on the premises in a house provided by his employer free of rent. The only question in that case was whether the injury arose out of and in the course of the employment, and it was held that it did, because the furnishing of transportation was a part of the contract of employment, and the claimant had a button or card furnished by the employer, which, by an

arrangement between the railroad company and the employer, authorized the claimant to ride on that train. The danger there was certainly far less incidental to the character of the business than was the danger of the present case. In cases of heat prostration the question frequently arises whether there has been an accident at all within the meaning of the Workmen's Compensation Law (Code 1924, art. 101, as amended), and it is in that connection that it most commonly becomes important to consider whether the claimant has been subjected to any other danger than that common to all the people of the neighborhood, or than others in the same employment normally are subjected to in the ordinary course of the work. See *Slacum v. Jolley*, 153 Md. 343, 138 A. 244. In the present case there was clearly an accident, and the only question is whether it arose out of the employment. There was no error in submitting that question to the jury on the evidence and instructions.

*Judgment affirmed, with costs.*