RAMÓN MONTANER, MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, composed of MANUEL LEÓN PARRA, CHAIRMAN, and F. PAZ GRANELA and JUAN M. HERRERO, COMMISSIONERS, Respondent, and CARMEN and CASIMIRA MATOS, Petitioners before THE INDUSTRIAL COMMISSION.

No. 178. Argued December 18, 1939.—Decided January 16, 1940.

868

E. Campos del Toro, Acting Attorney General, E. de Aldrey, Assistant Attorney General, Víctor J. Vidal González, and Guillermo Aliles Moréu, for petitioner. M. León Parra, for respondent. Virgilio Brunet and Miguel A. Casiano, for petitioners before the Commission.

Mr. Justice Travieso delivered the opinion of the Court.

The workman Juan Matos was opening branches in the irrigation ditches of a sugar cane plantation of the firm Luce & Company. His body was found in one of those ditches and his death was attributed to asphyxiation by submersion when he fell within the ditch during an epileptic attack. The Industrial Commission decided that said workman had suffered an accident in the course of his employment and as a consequence of the same. The Manager of the State Insurance Fund filed this appeal against the decision of the Industrial Commission alleging ''that the accident in which the workman lost his life did not arise from an act or function inherent to his work and that it did not occur as a consequence of the same but that on the contrary, it was a logical result of his epileptic predisposition as there

was nothing in the employment which induced or brought about an epileptic attack or could have caused the same.''

 The legal question presented in this case is new in this jurisdiction but not so in England and in the different States of the American Union in which the question has arisen in the numerous cases cited in the briefs of the parties herein.

In the case of *Georgetown College* v. *Stone,* 61 App. D.C. 200, 59 F. (2d) 875, the workman suffered an epileptic attack while using a hot water hose in the course of his employment and died as a consequence of the burns produced by the hot water. He was awarded the compensation prayed for because ''the employee's death was caused by the burns and not by the epilepsy.'' A like decision was rendered in *Rockford Hotel Co.* v. *Industrial Commission,* 132 N. E. 759, 300 Ill. 87, 18 L.R.A. 80, wherein an employee suffered an epileptic attack and fell in an ash dump; in *Industrial Commission of Ohio* v. *Nelson,* 186 N. E. 735, 127 Ohio St. 41, wherein the employee in an epileptic attack suffered a concussion of the brain on falling against the machine on which he was working, and in *Baltimore Dry Docks & Ship Building Co.* v. *Webster,* 139 Md. 616, 116 Atl. 842, wherein it was held that the death of a carpenter employed in the construction of a ship was the result of an accident in the course of and in consequence of his employment, when in kneeling to pick up his tools from the deck of the boat, he suffered an epileptic attack as a result of which he fell over the stern, on his back, thereby fracturing the brain. In this last case, the court stated as follows:

''Upon the authorities, I think the case is clear; an accident does not cease to be such because its remote cause was the idiopathic condition of the injured man. We must dissociate that idiopathic condition from the other facts, and remember that he was obliged to run the risk by the very nature of his employment, and that the dangerous fall was brought about by the conditions of that employment.'' 116 Atl. 845.

See also: *Miller* v. *Beil*, 75 Ind. App. 13, 129 N. E. 493; *Vulcan Detinning Co.* v. *Industrial Commission*, 295 Ill. 141, 128 N. E. 917; and *Carroll* v. *What Cheer Stables Co.*, 38 R. I. 421, L.R.A. 1916 D. 154.

The theory on which the decisions which we have cited are based is that the epileptic attack would not have caused the injuries or the death, if it were not for the fact that the work that the employee had to do forced him to be at that moment at the specific place where he received the injuries. If we apply that theory to the facts and concurrent circumstances of this case, we must arrive at the conclusion that the workman Juan Matos would not have lost his life were it not for the fact that the work which he had to do for his employer forced him to be near or in the irrigation ditches which are two or three feet deep and full of water in a sufficient quantity so that if a person fell in them he could drown. When industry exposes a workman to a risk to which he would not have been exposed under the ordinary circumstances of his life, it should be held liable in the case of death or injuries suffered in the course of the employment and as a consequence of an inherent risk of the same.

The spirit of the "Workmen's Compensation Act", (Act No. 45, April 18, 1935) is to compensate the injuries or deaths of workmen as a consequence of accidents arising from any act or function inherent to the work or employment and occurring in the course of said employment. The exceptions to said rules enumerated in Section 4 of the Act, are: (*a*) when he willfully causes himself the injury; (*b*) when the workman is intoxicated and the intoxication is the cause of the accident; (*c*) when the injury is caused by the criminal act of a third person; and (*d*) when the recklesness of the workman is the sole cause of the injury. The enumeration of the cases in which as an exception, a compensation may not be collected for an accident in the course of the employment and as a consequence of the same, excludes all other reasons which may be alleged in opposition to a claim.

*Inclusio unius est exclusio alterius.* Bonilla v. *Mitchel,* 51 P.R.R. 123. If the fall of the workman Juan Matos had been caused by his own negligence, then surely the State Insur- ance Fund would not have been able to allege the defense of contributory negligence in opposition to the claim. We see no reason whatsoever to establish a difference between the contributory negligence and the idiopathic condition of a workman as the determining causes of an accident when neither the one nor the other appear included among the circumstances which according to Section 4 of the Act, *supra,* preclude the award of a compensation.

The cases of *Mausert* v. *Albany Builders' Supply Co.,* 164 N. E. 729, 250 N. Y. 21; *Andrews* v. *L. & S. Amusement Corporation,* 170 N.E. (N. Y.) 506–507; and *Barath* v. *Arnold Paint Company,* 238 N. Y. 625, 144 N. E. 918, cited by the petitioner, do not uphold, in our opinion, his contention that an accident occurring under the circumstances of this case is not compensable. In *Andrews* v. *L. & S. Amusement Cor- poration,* supra, the court said as follows:

"The employer was engaged in operating a theater. On that day Leslie Andrews was hired to paint the marquise. He asked one Van Mersereau, a fellow employee, for a pail of water, and they both walked toward the faucet along the alleyway at the corner of the building. Mersereau was carrying the pail. While thus pro- ceeding, Andrews was taken with a fit. Mersereau describes it by saying that he saw the rolling of his eyes and the white stuff coming from his mouth. Andrews fell, striking his head on the sidewalk, made of concrete. The State Industrial Board found as a fact that Andrews 'had an epileptic seizure which caused him to fall, and in falling his head struck the cement sidewalk, whereupon he sustained injuries in the nature of a fractured skull, from which he died on the same day.'. The Board made an award upon a finding that death resulted from accidental injuries arising out of and in the course of employment. The Appellate Division has affirmed by a divided court, upon the authority of *Mausert* v. *Albany Builders' Supply Co.,* 250 N. Y. 21, 164 N. E. 729. There is a distinction between that case and the one now on appeal.

"Mausert, who was a teamster, fell from the seat of his truck to the pavement, the wheels passing over his body, causing death. He was in the course of his employment, and we held that his death arose out of his employment. The risk of falling from the seat of a truck and being injured was incident to and a risk of his employment. Every day that he was driving this truck there was the risk or danger that he might fall off, while careless or asleep, and be injured either by the horses, other vehicles or his own. This risk, we said in the opinion, would not surround him while sitting in a chair in his home, or upon the ground, or even while walking the streets. It was as a teamster that he incurred the risks. *Barath* v. *Arnold Paint Co.*, 238 N. Y. 625, 144 N. E. 918, cited in the Mausert opinion, was another injury resulting from apoplectic stroke, the fall in that case being from a scaffold, causing a fractured skull. The conclusion there was that the risk or danger was one arising out of the employment because the loss of control through apoplexy while on a scaffold would result in a serious fall. *The place of work increased the risk and danger from such an affliction.*

"None of these added risks or dangers are found in the facts of this case. Andrews was on the sidewalk; he had not commenced his painting; he was walking with his co-employee to get a pail of water. The epileptic seizure caused him to fall to the sidewalk, striking his head and fracturing the skull. Where was there any added risk due to the employment? The same result might have followed if he had been coming to or going from his employment, or even in his own house, if he had fallen and struck his head on a chair, table, or other hard substance. If the epileptic fit itself had killed him, like an attack of heart disease, all concede that there would be no recovery. *The risk of falling to the pavement in such a fit was not due to the employment. Had Andrews fallen from a ladder, from a scaffold, from a stairway, or down a hole, the chances of injury would have been increased. If there had been an accident causing his fall, we would have another element in the case. There was no accident; he fell because of internal disorders, and the injury resulted from no added risk because of his employment. This distinction runs through many cases.*" (Authorities). (Italics supplied).

For whatever relation that they may have to the decision of this case, see the cases of *Montaner* v. *Industrial Commission*, 54 P.R.R. 686, and *Montaner* v. *Industrial Commission*, 54 P.R.R. 113.

For the reasons set forth, we are of the opinion that the death of Juan Matos was due to an accident occurring in the course of his employment and as a consequence of a concurrent risk of the same and that the decision appealed from must be affirmed.