ROBERT WILLIAM FRANQUET *v.* IMPERIAL MANAGEMENT CORPORATION ET AL.

[No. 999, September Term, 1974.]

*Decided July 28, 1975.*

The cause was argued before THOMPSON, MOYLAN and MENCHINE, JJ.

*Thomas F. Santer,* with whom were *Ashcraft, Gerel & Koonz* on the brief, for appellant.

*George P. Haldeman,* with whom were *Brault, Scott & Brault* on the brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

Robert William Franquet, (claimant) claimed workmen's compensation benefits from Imperial Management Corporation, his employer, and General Insurance Co. of America, its insurer (employer and insurer) as the result of an alleged accidental injury sustained on July 2, 1971. The Workmen's Compensation Commission (Commission) determined that "claimant did not sustain an accidental injury arising out of and in the course of his employment * * * and that the disability of the claimant is not the result of [an] accidental injury." Claimant appealed to the Circuit Court for Montgomery County.

When the cause was tried in the Circuit Court for Montgomery County, the jury found that claimant had sustained an accidental injury arising out of and in the course of his employment. Thereafter, upon motion of the employer and insurer, the trial court granted judgment n.o.v. in favor of the employer and insurer. Claimant now appeals to this Court. We find that the evidence required submission of the issue to the jury for its decision and shall reverse the judgment n.o.v.

The facts are not disputed in any substantial way and may be summarized as follows: Robert William Franquet, aged 30 years, was under medical orders to take prescribed dosages of dilantin four times daily to control petit mal epilepsy. On July 2, 1971 he neglected to take the dosage scheduled for midday. On that date and at that time claimant had been showing an employee under his charge how to use a scythe. Claimant then proceeded, with two other employees, to a drainage ditch where "[He] was instructing or discussing with two of the men, the engineer and one of the maintenance men on the development how to solve a drainage problem that we had. As [he] was discussing it [he] passed out."

His guidance and directions to those employees had brought him to a point where he was required to occupy a standing position at the top of a storm sewer outfall. This sewer outfall was in the form of a drainage ditch, the bottom third of which had been lined with rocks to avoid erosion. Some of those rocks had ragged edges. When claimant passed out, he fell headfirst into the drainage ditch. His head struck the rocks in the ditch, inflicting a wound requiring hospital treatment. His skull was x-rayed and his wound sutured. He lost time from his employment because of the head injury.

The drainage ditch was variously described as 7 to 10 feet wide and 3 to 5 feet deep. It ran through a grassy area of the apartment complex of which claimant was the property manager. The upper two thirds of its sloping sides were grass covered as was the area where claimant had been standing. It is not disputed that claimant's official duties carried him to the position he occupied when his fall occurred or that the injury to his head was produced by his fall upon rocks in the bottom one-third of the drainage ditch.

On these facts the trial judge granted the motion for judgment n.o.v. after the jury's decision favorable to claimant's recovery. In the course of a written opinion the trial judge said, *inter alia,* " * * * it would be stretching the idiopathic doctrine too far to suggest that a property

manager, walking around apartment premises, as here, falls into the class of employee with such unusual employment as to permit a recovery under the statute." We believe that the question was properly one for determination by the jury.

That this is an idiopathic fall case is a conceded fact. Larsen, in his exhaustive treatise Workmen's Compensation Law, in § 12 under the heading "Risks Personal To The Employee" declares the general rule governing such cases as follows:

> "§ 12.00 Injuries arising out of risks or conditions personal to the claimant do not arise out of the employment unless the employment contributes to the risk or aggravates the injury. When the employee has a preexisting physical weakness or disease, this employment contribution may be found either in placing the employee in a position which aggravates the effects of a fall due to the idiopathic condition, or in precipitating the effects of the condition by strain or trauma."

In § 12.11 "Increased-danger rule applied to idiopathic falls," Larsen adds:

> "When an employee, solely because of a non-occupational heart attack, epileptic fit, or fainting spell, falls and sustains a skull fracture or other injury, the question arises whether the skull fracture (as distinguished from the internal effects of the heart attack or disease, which of course are not compensable) is an injury arising out of the employment.
>
> "The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. * * *"

That Maryland subscribes to the general rule as stated by

Larsen seems plain. In *Baltimore Dry Docks, etc. v. Webster*, 139 Md. 616, 116 A. 842, although the Court of Appeals left the issue open, its quotation from the English case of *Wicks v. Dowell* (1905) 2 KB 225, 2 Annot. Cases 732, was a prelude to and precursor of the subsequently adopted Maryland position: (at 625 [845])

> "Upon the authorities, I think the case is clear; an accident does not cease to be such, because its remote cause was the idiopathic condition of the injured man; we must dissociate that idiopathic condition from the other facts and remember that he was obliged to run the risk by the very nature of his employment, and that the dangerous fall was brought about by the conditions of that employment, I think, therefore, that the present case comes within the purview of the Workmen's Compensation Act."

In *Baltimore Towage, etc. v. Shenton*, 175 Md. 30, 199 A. 806, where a workman fell from a pier and was drowned, the Court of Appeals, after pointing out that the drowning would not have resulted had not the man been required to be on the pier at the time, posed these questions at page 33 [807]:

> "Possibly a faint, or some other imaginable occurrence that may have caused him to topple over, would be considered a proximate cause, if that is important, but, when there is no possibility of a cause of the death unrelated to the employment, is the compensation system concerned with a distinction between proximate and remote causes? Can that distinction be observed consistently with the fundamental purpose of transferring the burden of injury by extra hazards of an employment *from the workmen to the industry?* "

The Court after discussing English and American cases dealing with the subject fixed Maryland's position, saying at 33-36 [807-08]:

"In England compensation has been allowed in such cases since the decision in *Wicks v. Dowell & Co., Ltd.*, [1905] 2 K. B. Div. 225. Wicks, while unloading coal from a ship, and standing by the open hatchway through which the coal was being raised, was seized with an epileptic fit, and fell into the hold, to his injury. Collins, M. R., said, page 229, 'When we get rid of the confusion caused by the fit and the confusion involved in not dissociating the injury and its actual physical cause from the more remote cause, that is to say, from the fit, the difficulty arising from the words "out of the employment" is removed. How does it come about in the present case that the accident arose out of the employment? Because by the conditions of his employment the workman was bound to stand on the edge of what I may style a precipice, and if in that position he was seized with a fit he would almost necessarily fall over. If that is so, the accident was caused by his necessary proximity to the precipice, for the fall was brought about by the necessity of his standing in that position.'

"In *Mausert v. Albany Builders' Supply Co.*, 250 N. Y. 21, 164 N. E. 729, compensation was held allowable for the death of a teamster by falling from his seat and under the wheels, from an unknown cause. 'It is the fall,' said the court, page 25, 164 N. E. page 730, 'and the injury resulting from it that constitutes an accident within the purview of the statute. The cause may be disregarded and the inquiry limited to the investigation to disclose whether the fall * * * bore with it such consequences as would not have occurred except for the employment.' The same court, in *Andrews v. L. & S. Amusement Co.*, 253 N. Y. 97, 170 N. E. 506, held that compensation was not allowable for the result of a fall to the sidewalk of a workman who, while walking there in the course of his employment, was seized with a fit.

Distinguishing the *Mausert* case the court said (page 507), 'The risk of falling from the seat of a truck and being injured was incident to and a risk of his employment. Every day that he was driving his truck there was the risk or danger that he might fall off, while careless or asleep, and be injured either by the horses, other vehicles or his own. * * * It was as a teamster that he incurred the risks.' On the other hand, 'The risk of falling to the pavement in such a fit was not due to the employment.' So in Massachusetts. In *Dow's Case*, 231 Mass. 348, 121 N. E. 19, in which a boy, from physical infirmity, fell into a machine at which he was working, the court said, page 352, 121 N. E. page 21, 'The real question is not so much the cause of the fall or whether the fall as such arose out of the employment, but whether the risk and harm of a fall into or upon machinery then in use by an employee are incidents of that business and hazards to which the workman would not have been exposed apart from that business.' And on the contrary, in *Cinmino's Case*, 251 Mass. 158, 146 N. E. 245, in which the workman, from a cause unknown, reeled, threw up his hands, and fell to the concrete floor of a factory, compensation was held not allowable on those facts, the court finding that a fall to a floor was not a hazard peculiar to the work, and remarking that there was no substantial resemblance in the case to that of *Wicks v. Dowell & Co., Ltd.*, *supra*, or *Dow's Case*. In accord with these cases is *Freedman v. Spicer Mfg. Co.*, 97 N. J. L. 325, 116 A. 427, a case in which compensation was held allowable for the results of a fall in a faint.

"In *Reeves v. Dady Corporation*, 95 Conn. 627, 113 A. 162, in which the workman, feeling faint, went to stand at a doorway, and there fainted and fell to his death, the court, while holding it unnecessary for the claimant to prove that the

employment, or some condition connected with it, was the proximate cause of the fall, concluded that as the employment did not take the man to the door the accident did not arise from the employment.

"On the other hand, some American courts have taken the view that death or disability from an accidental injury arising out of the employment intends an accident originating, as a proximate cause, the fall which produces the death or injury. See *Cox v. Kansas City Refining Co.*, 108 Kan. 320, 195 P. 863, a case of a fall against hot pipes, and *Bibb Mfg. Co. v. Alford,* 51 Ga. App. 237, 179 S. E. 912, a case of the fall of a dizzy man to the floor; and note 37 A. L. R. 771. The court in *Bibb Mfg. Co. v. Alford, supra,* thought the weight of authority in American cases supported the requirement of accident in the originating cause of the fall, but in some of the jurisdictions referred to the opposite conclusion has been reached, notably in New York and Massachusetts, as in the cases here quoted.

"In the face of this conflict it cannot be said that there is no room for a difference in construction of the statutory requirement, but it is the conclusion of this court that the holding of the English case, and the American cases in accord with it, conforms to the terms and the purpose of the compensation system, as stated, and that an accident met with as a consequence of a fall, if that consequence is brought about by hazards of the employment, and would not be met with except for the employment, must be considered to arise out of the employment. And when there is legally sufficient evidence for a finding that it did arise out of the employment, and the case is otherwise within the statute, a verdict to the contrary could not, of course, be directed."

Again, in *Watson v. Grimm,* 200 Md. 461, 90 A. 2d 180, wherein the claimant's decedent had fallen from a truck and was killed, the Court of Appeals said at 466 [183]:

"Where an employee's injury resulting from a fall is contributed to by some factor peculiar to the employment, it arises out of the employment within the meaning of the Act, *although the fall has its origin solely in some idiopathy of the employee.*" (Emphasis added.)

To the same effect are: *Paul Construction Co. v. Powell,* 200 Md. 168, 185, 88 A. 2d 837, 845; *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 61, 158 A. 2d 621, 625.

In the subject case the evidence showed that the duties of his employment had brought the claimant to the brink of a rock lined sewer outfall and that his idiopathic fall had precipitated him into its depths. The injury sustained by claimant resulted from special conditions existing at the point to which the duties of his employment had taken him. Thus, there was evidence that the performance of necessary duties of his employment had affected the injury sustained in the fall in a significant way. The question whether claimant's employment· aggravated the effects of his idiopathic fall should have been left to the jury for decision. Otherwise stated, there was evidence tending to show that the accidental injury had arisen out of claimant's employment. That the injury occurred in the course of his employment is not disputed. Thus there was evidence legally sufficient to meet the dual requirement that the accidental injury be shown "to arise out of" as well as "in the course of the employment." *Cf. Klein v. Terra Chemicals International, Inc.,* 14 Md. App. 172, 286 A. 2d 568. The motion for judgment n.o.v. was erroneously granted.

> *Judgment N.O.V. reversed and case remanded for entry of a judgment reversing the decision of the Workmen's Compensation Commission.*
> *Costs to be paid by appellees.*