# OWNERS' REALTY COMPANY ET AL. *v.* LULU BAILEY.

*Workmen's Compensation—Procedure on Appeal—Scope of Employment—Extinguishing Fire—Issues and Instructions.*

The proceedings on appeal from the Industrial Accident Commission being, by Code, art. 101, secs. 39, 56, "informal and summary," there is no place for formal pleadings, and the court's refusal to receive a so-called declaration, offered by the appellants, the employer and insurer, was proper.        p. 278

In view of the grant of an issue as to whether the employee's death resulted from an accidental injury which arose out of and in the course of employment, *held* that eight other issues were properly refused, two of them being inconclusive and confusing when considered in connection with the issue granted, and the other six being comprehended therein.        pp. 278, 279

On a claim for injury received by one in running towards a public garage near his employer's property, on hearing a cry of fire from the garage, such facts as that he was so doing with the intention of helping some one whom he believed to be on fire, and that the injury resulted from a risk common to the public at large, were not necessarily inconsistent with the theory that the injury arose out of and in the course of his employment, if that employment involved the duty of protecting the employer's property from fire, and issues as to such facts were properly refused.        pp. 279, 280

On a claim for injury received by an employee in running to put out a fire in a garage near a number of houses owned by his employer, a company engaged in building and selling houses, evidence was admissible as to his making repairs on houses in which the company was interested, to show that in seeking to protect the company's property from fire he was acting within the scope of his employment.        p. 282

Md.]

Where an employee, among whose duties was that of making small repairs on houses owned by or recently sold by his employer, a realty company, was injured in running to a garage, on hearing a cry of fire therefrom, *held* that whether the injuries arose out of and in the course of his employment was for the jury, the evidence permitting the inference that, in running to the garage, he was acting to protect nearby houses in which his employer was interested, even though incidentally he desired to help any person in danger.                    pp. 283-287

In such case, if the employee, in running to the garage, was acting from motives or reasons of his own, not connected in any way with his employment, his injuries did not arise out of and in the course of his employment, and were not compensable.
                    pp. 287, 288

In the case of a claim for injuries received by an employee while running towards a garage, on hearing a cry of fire therefrom, it was proper to refuse a prayer which made the right to compensation turn on whether, in so running, the employee temporarily departed from his employment in order to assist some one whom he thought to be on fire in the garage, without giving the jury any guide to assist them in determining whether the employee's action was such a temporary departure.     p. 288

A prayer that, unless the risk which caused the injury was so incident to the specific duties of the employment that it was an attribute of or special or peculiar to that employment, and that the said risk was connected with the work of the employee, and flowed therefrom as a natural consequence, the verdict should be in favor of the employer and insurer, was proper.
                    pp. 288, 289

A prayer that, if the workman's employment placed him at the particular spot where he was injured, this of itself was not a sufficient basis for an award of compensation in favor of the claimant, was properly refused as incomplete, and misleading upon the facts, since, upon the facts, if the workman's employment placed him at the particular spot where he was injured, an award might properly be made in his favor.     pp. 288, 289

A prayer that the employer and insurer were not liable if the jury found that the injury occurred in the course of the

employment, but that it came from a risk to which the employee, in common with other members of the public, was equally exposed apart from his employment, was properly refused, both because the fact that the risk was common to the public was not necessarily inconsistent with the theory that the injury arose out of and in the course of his employment, and also because evidence was lacking that the risk which caused the injury was common to the public.                          pp. 276, 289

A prayer that, in order for the injury to arise out of the employment, there must be a causal connection between the conditions under which the work is to be performed and the resulting injury, was erroneous, as failing to explain what was meant by "conditions," since injuries received from the doing of the work itself may be compensable as well as those occasioned by the conditions under which it is done.                          pp. 289, 290

*Decided June 9th, 1927.*

Appeal from the Baltimore City Court (DUFFY, J.).

Claim by Lulu Bailey against the Owners' Realty Company, employer, and the Republic Casualty Company, insurer, on account of the death of claimant's husband, James Bailey. From a judgment in favor of the claimant, affirming an award by the Industrial Accident Commission, the employer and insurer appeal. Affirmed.

The fifth prayer of the defendants (appellants), referred to in the opinion, was as follows: The employer and the insurer pray the court to instruct the jury that, if the jury find that the injury which resulted in the death of James Bailey occurred in the course of his employment, but that the injury came from a hazard to which the said Bailey, in common with other members of the public, was equally exposed apart from his employment, and that the said injury could not fairly be traced to his employment as a contributing proximate cause apart from the usual risks common to all persons in the neighborhood, irrespective of their em-

ployment, then the verdict of the jury shall be for the employer and the insurer, and the answer to the first issue submitted shall be "No."

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George Ross Veazey,* with whom was *Edwin W. Wells* on the brief, for the appellants.

*Benjamin Chambers,* with whom was *Daniel B. Chambers* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

James Bailey died on December 2nd, 1925, from accidental injuries received on November 13th, 1925, whilst in the employ of the Owners' Realty Company. Subsequently Mrs. Lulu Bailey, his widow, filed with the State Industrial Accident Commission, against his employer, a claim for compensation on the ground that the injuries which caused his death arose out of and in the course of his employment by that company. Hearings were had before the commission, and, at the conclusion of them, compensation was awarded to Mrs. Bailey for 277 7/9 weeks at $18 per week. The employer and the insurer, on February 17th, 1926, appealed from that award to the Baltimore City Court and, on October 28th, 1926, offered to file in that court a "declaration" which the court on motion refused to receive. Later, on the same day, the defendants submitted nine issues, of which the court allowed the first and refused the others, and the case went to trial on the granted issue. The trial resulted in a verdict for the claimant, and, from the judgment on that verdict, the employer and the insurer appealed. During the trial two exceptions were reserved to rulings on evidence and one to the action of the court on the prayers. These rulings, together with the court's refusal to receive the "declaration" offered by the appellants, and its refusal of the

issues two to nine inclusive offered by them, are submitted by the record for review in this Court.

The question presented by the court's refusal to receive the so-called declaration offered by the appellant is without difficulty. At the time it was filed, the appellants had already taken an appeal in the manner usually followed in such cases, and no further proceeding of any kind other than the framing of suitable issues was needed to have the award of the commission reviewed by the Baltimore City Court. While its introductory part was in the form of a common law declaration, the paper asked for no judgment not demanded by the appeal, and had no place in the proceeding before the court. In support of it appellants referred to a remark in *Kelso v. Rice,* 146 Md. 275, to the effect that the record in that case did not disclose "any pleadings," as an intimation that in such a proceeding as this there should be pleadings. But that remark was not an invitation to formulate a system of pleading, but a statement of fact. There are no pleadings in the accustomed sense of that word in such cases as this, because the statute does not authorize any, and none are needed. The proceedings before the commission, and upon appeal, are "informal and summary" (article 101, secs. 39, 56), and are of such a character that formal pleadings have no place in them.

Nor do we find any error in the court's refusal to grant the issues submitted by appellants, numbered two to nine, which is the subject of the first exception. The granted issue was in this form: "Did the death of James Bailey result from an accidental injury which arose out of and in the course of the employment?" The eight refused were as follows: "2. When James Bailey heard the cry of 'fire,' did he return towards Berry's garage with the intention of helping some one whom he believed to be on fire in the garage? 3. Did the injury result from a risk common to the public at large? 4. Did the deceased Bailey's work for his employer require him to be at Berry's garage at the moment

when he was injured? 5. If you answer the last question 'yes,' was the risk of injury by fire in Berry's garage connected with the work of the deceased, and did it flow therefrom as a natural consequence? 6. Was there a causal connection between the conditions under which the deceased performed his work and the resulting injury? 7. Was the injury received while the workman was doing the duty which he was employed to perform? 8. At the time of receiving the injuries, had James Bailey temporarily departed from the service of his employment for the purpose of offering assistance to some one whom he thought to be on fire in the garage operated by Berry? 9. Was the risk which caused the injury in this case so incidental to the specific duties of Bailey's employment that that risk was special or peculiar to that employment?"

An analysis of these issues shows that the second and third were inconclusive and confusing. Such facts as that Bailey was injured while returning to help some one whom "he believed to be on fire," or that his injuries resulted from a risk "common to the public at large," were not necessarily inconsistent with the theory that they arose out of and in the course of his employment, if that employment involved the duty of caring for his employer's property against fire. The "risk" which he took may well have been "common to the public at large," but the consequences of his failure to take it might have resulted in special damage to his employer, and, in attempting to extinguish a fire which could have caused such damage, he may have been acting in the interest of his employer, even though incidentally he benefited some one else. The fourth, fifth, sixth, seventh, eighth, and ninth issues were obviously comprehended by the granted issue, and were unnecessary. The real issue presented by the appeal was whether Bailey's injuries arose out of and in the course of his employment. An affirmative answer to any one of these issues must have resulted in an affirmative answer to the granted issue, and a negative answer to any one of them must have resulted in a negative answer to the granted issue. The granted issue was complete and comprehended a finding

on all the questions submitted by the last six refused issues, and they were therefore superfluous and properly refused. The needless repetition and multiplication of prayers in actions at law has been disapproved by this Court. *Rosenkovitz v. United Rys. Co.,* 108 Md. 316; *Wilson v. Kelso,* 115 Md. 162; *Knecht v. Mooney,* 118 Md. 583; *Levine v. Chambers,* 141 Md. 336. And the duplication of issues is even more objectionable in such cases as this, where the proceedings are more "informal and summary" than in an ordinary common law case.

To understand the force of the remaining exceptions, all of which relate to the evidence and the prayers, a more extended reference to the facts before the court and jury is necessary. Without referring to it in detail, it is sufficient to say that there was evidence offered tending to show these facts, which for convenience and brevity will be stated in narrative form.

The Owners' Realty Company is a Maryland Corporation, engaged in the development of real estate, and in connection with that business it buys and sells land and builds and sells houses, and in the course of its business it takes mortgages on houses sold by it, and in such cases continues to care for the property so sold until its investment is safe.

On November 13th, 1923, it was engaged in the construction of a group of houses on Littleton Road and Ellicott Driveway in Baltimore City, and in connection with that and other work employed James Bailey, the deceased, as a "working" or "carpentering" superintendent." Bailey's duties in connection with that work, quoting Mr. Charles W. Hurst, president of the company, "consisted in seeing that the houses were properly built, looking after the pay roll, ordering material necessary for the construction of the houses, everything in connection with construction from the time they were started until they were completed, * * * general superintendent, had charge of all materials on the ground, like hardware, tools, cement, lime, stone, labor." But he had other duties, and in connection with them Mr. Hurst gave this testimony: "Yes, I might say the Owners'

Realty Company has mortgages on most of these houses on
Ellicott Driveway, and many of the houses which have been
sold in the last eighteen months.   There are minor repairs
which had to be made and Mr. Bailey's duties also covered
looking for the little things that developed. * * * Q. Did you
own any of the garages on that alley? A. I have sold them
all, but I have a second mortgage on all but three.  Q. I did
not understand just what you said Mr. Bailey's duties were
with reference to these houses on which you have the second
mortgage?  A. The houses have been sold so recently and,
while our houses are all well built, little things will develop,
little minor defects, and we keep an organization for the
purpose of trying to satisfy our purchasers until they reach
the safety point.  After we sell a house we do not stop taking
care of it."  One of the duties required of Bailey was to
make out the pay roll of the workmen under his supervision,
take it to his employer, receive the necessary funds, and pay
all the workmen.  In performing that duty he was accus-
tomed to use his own automobile, and in speaking of that
custom Mr. Hurst said: "Q. Mr. Bailey used his automobile
in the course of his work?  A. Yes, and getting little orders
and things he knew he needed in connection with the work,
like a keg of nails, a bucket of cement, anything like that,
he used his automobile for that purpose.  Q. You knew about
that?  A. Oh, yes.  Q. Did your company contribute to the
upkeep or running of the automobile?  A. Not to our know-
ledge.  Q. He used it for his own convenience?  A. Yes,
but we recognized the fact that he had a car and used it in
connection with our business."

On the day of the accident, Bailey's car, which was parked
on Littleton Road, was out of repair, and, as he wanted to use
it to take the pay roll to his employer's office, he left it to
go to a garage operated by Edward W. Berry, located on an
alley several hundred feet from Littleton Road, to get a
mechanic to repair it.  He saw Berry, told him what he
wanted, and he and Berry started to walk to his car.  When
they had gotten some three quarters of a block from Berry's
garage, they heard a cry of fire, and saw flames coming from

an automobile in that garage.  They both turned and started back towards it, but just as Bailey reached the door of it a mechanic, who had been engaged in cleaning the motor of the car which caught on fire, threw out a bucket of flaming gasoline, and drenched him with it, so that he was enveloped in flames, and so badly burned that he died several weeks later.

The realty company owned or had mortgages on property "all around" the fire, and the houses which it was then building were only a few hundred feet away.  After he was burned, Bailey told Dr. Sachs, who attended him, that he was in conversation right outside of the garage and he remembered he heard some one yell "fire", and he ran to help; he thought some one was on fire, and when he got to the door the gasoline met him and it ran on his face and neck, and he pulled his coat down, and some people extinguished the flames, and they brought him to the hospital.

The claimant's theory of her right to compensation was that the company was interested in property endangered by the fire, and that, as its employee, Bailey, in attempting to help put out the fire, was acting within the scope of his employment for the protection of his employer's property. To establish that theory she offered, among others, a Mrs. Naomi Green as a witness.  After having testified that "she bought a house from the Owners' Realty Company and that she was told by Mr. Jackson, the real estate man, when she moved in the house, if there was anything to be done, call on Mr. Bailey. * * * That Mr. Bailey made repairs on her house after she bought it from the Owners' Realty Company; that he finished up the cellar steps and the beading around the stairs going up to the second floor and made other repairs on her house," She was asked whether she had ever seen Bailey making repairs to houses belonging to other people purchased by them from the Owners' Realty Company.  The court overruled an objection to that question, and the witness answered "yes," that he did it because there was no one else to do it.  This evidence was relevant and material, and we find no error in this ruling, which is the subject of the second exception.

Mrs. Annie Carstens testified "that there are two rows of garages across the alley in the rear of her house; this is a group of about ten garages; that there are two rows of garages and that Berry's garage was in the second row from her house, but that the second row of garages are on a higher level than the first row and she could see them as well as the first row from her house; that she knew Mr. Bailey during his lifetime; that he was employed by the Owners' Realty Company; that he made various repairs on her house for the Owners' Realty Company," that she had "seen him the day before, because he was working in my house the day before it happened, and on the day that it happened he was working in my house that morning * * * fixing doors, repairing doors, two doors." She further said that she had seen Bailey on the morning of the accident, and had called to him that she wanted him to hang some doors in her house. She was then asked whether Bailey had indicated that he had heard her. An objection to that question was also overruled, and the witness replied that he had "waved his hand he would be there." Assuming that this evidence was inadmissible, it was harmless, and that ruling, which is the subject of the third exception, was free from reversible error.

The fourth and final exception relates to the court's rulings on the prayers. The appellants offered eleven prayers, of which the first was granted and the others refused. These prayers fall into two groups, one, lettered A to F, pray a directed verdict for the defendants, while the others, numbered one to five, sought to have the jury instructed as to the legal significance and effect of the evidence before them. These groups will be considered in inverse order.

The underlying theory of the group of prayers lettered A to F appears to be that the evidence in the case conclusively shows that Bailey, for purely altruistic and humanitarian motives, in no way connected with his employment by the Owners' Realty Company, left that employment to assist in extinguishing a fire and to rescue from extreme peril one endangered thereby, and that injuries received in

the performance of that act were not received in the course of his employment, did not arise therefrom, and are not compensable under the statute.    Whatever may be said of the soundness of the legal abstraction embodied in that theory, it must fall here, for no such conclusive presumption can be drawn from the evidence in this case.    Injuries compensable under the act are "accidental injuries arising out of and in the course of the employment" in which the injured workman is engaged at the time.    Article 101, C. P. G. L. of Md., sec. 65.    And the question under consideration turns upon the meaning to be given that phrase, which is the cornerstone of the whole system of industrial insurance provided by the statute.    The legislation is remedial in character, designed and intended to afford a measure of relief to employer and employee engaged in extrahazardous work from the waste consequent upon injury and disability to workmen engaged therein by integrating such losses with the cost of production, and no narrow, technical, or quibbling construction of its language should be permitted to frustrate that intention, or hinder or embarrass the efficient operation of the law.    On the other hand, it was not the intention or the purpose of the act to impose upon the employer the obligation of a general insurer, and it should not be so construed as to permit compensation in any case in which the injuries which are the basis of the claim cannot be attributed to some act or service in the employment in respect to which the claim is made, or reasonably incidental thereto.

It is not disputed that, in going to Berry's garage, and in walking back with Berry towards his own car, Bailey was acting within the scope of his employment, but it is said he left that employment as soon as he responded to the call of "fire" from Berry's garage.    But that is to put too narrow a construction upon the words "arising out of and in the course of the employment" in which he was engaged.    His employer either owned or was financially interested in property "all around" the fire, which he, Bailey, may well have thought would be endangered by it.    He was not only in

charge of a number of houses not very far away, then under
construction, owned by his employer, but was charged to
some extent with the care of other houses, upon which his
employer held mortgages, in the immediate vicinity of the
fire.   It cannot be said as a matter of law that under such
circumstances the injuries which he received did not arise
out of and in the course of his employment.   It is true that
Dr. Sachs said that Bailey told him that, when he heard
some one "yell" fire, "he ran to help, he thought some one
was on fire," but that testimony, assuming that the jury were
bound by it, is not inconsistent with the inference that, in
helping to put out the fire, he was acting to protect his
employer's property.   The cases cited by the appellant in
support of the proposition that in acting as he did Bailey
left his employment are not in point, for they all relate to
instances in which the claims were based on injuries grow-
ing out of some act wholly disconnected with and unrelated
to the employment in respect to which they were made, or the
interests of the employer of the injured workman.   But on
the other hand, it has been definitely held in the following
cases that, upon facts analogous to those stated, that the
injuries for which compensation was claimed did arise out
of and in the course of the employment in which the injured
workman was engaged.   In *Belle City Malleable Iron Co. v.
Rowland,* 170 Wis. 293, a millwright leaving the plant, where
he was employed as a pattern maker, long after customary
working hours, discovered a fire in the factory, returned to
put it out, and lost his life.   In considering whether in doing
that he was acting within the scope of his employment, the
court said: "But it is a reasonable inference that he did so
for either one or both of these purposes: (1) Under the
specific duty devolving upon him to have charge of and
look after the valuable patterns essential for the work being
done by his employer; (2) from the sense of obligation to
use a reasonable amount of care to save his employer's prop-
erty at a time of such emergency.   As to each of these it
needed no specific instructions from any superior to perform

such services or voluntarily assume such responsibility while making an effort within the field of reasonable care to save the property of his employer. While so doing he cannot be considered, as a matter of law, to be a stranger. *McPhee's Case*, 222 Mass. 1, 4; *Munn v. Industrial Board*, 274 Ill. 70. We do not think that either the letter or the spirit of the Workmen's Compensation Act requires that such employee should be penalized for obeying such a natural and commendable instinct on his part." In *Munn v. Industrial Board*, 274 Ill. 70, a workman was employed to run an elevator and attend to the boilers in a certain building. A fire occurred in the boiler room after his working hours, but before he had left the building, and in attempting to extinguish it he was injured so that he died. In sustaining an award of compensation, the court in that case said: "An employee should not be penalized for working overtime if he wishes to do so, or for endeavoring to save his master's property." And in *McPhee's Case*, 222 Mass. 1, an employee of one who ran an amusement resort was fatally injured in attempting to extinguish a fire which broke out in a garage about forty feet from his employer's property. He was superintendent of the resort, had organized a fire brigade for its protection, and was also a member of the fire department of the town of Hull. In upholding an award of compensation in that case the court, through Chief Justice Rugg, said: "The interests of his general employer in the extinguishment of a fire in such threatening proximity to its property well may have been found to have been so dominant as to absorb the exclusive attention of McPhee and to have rendered him in the direction of his own conduct chiefly concerned to act for its interests as to the means employed and the result to be achieved in the particular service of extinguishing the fire. If this was so, then his efforts were directed to the promotion of the business of that general employment, even though it happened that at the time he was acting in accordance with his obligation to the town fire department. But under such circumstances the latter would

be accidental and subsidiary, while the substantial and preponderant factor controlling his action would be the duty owed to his employer, who was the subscriber."

Without further laboring the point, in our opinion there was in the case evidence legally sufficient to permit the inference that Bailey in returning to the garage to help extinguish the fire was acting to protect his employer's property, that such act was reasonably incidental to his employment, and that the injuries which resulted in his death arose out of and in the course of that employment. Defendant's prayers A, B, C, D, E, and F were therefore properly refused.

In addition to these prayers the appellants offered five prayers, numbered one to five, of which the court granted the first and refused the others. The defendant's third and fourth prayers are based upon the theory that, if Bailey in going back to the garage acted from motives or reasons of his own, not in any way connected with his employment, that the injuries which he received did not arise out of and in the course of his employment, and were not compensable, and submitted the question of whether he did so act to the jury.

The legal principles involved in that proposition are sound, and if correctly stated in these two prayers they should have been granted. *McNicol's Case,* 215 Mass. 497; *Schneider's Workmen's Compensation,* sec. 262. As we have stated, the employer of workmen engaged in an extra hazardous employment is not a general insurer of their lives and safety, but is only required to compensate them according to the schedule fixed by the statute for injuries which can be traced to the employment. For instance, if a truck driver leaves his truck to salvage property in which his employer has no possible interest, and is injured, or if one is employed in roadwork near a stream and leaves his work to save a person, a stranger to his employer and to his employment, from drowning, and is himself drowned, or if, as in *Sichterman v. Kent Storage Co.,* 217 Mich. 364, a

traveling salesman leaves his own car, which he is using in the course of his employment, to assist a peddler whose car has broken down, and is injured, such injuries are not compensable under the statute (*Schneider's Workmen's Compensation,* sec. 262; *Ruegg, Employers Liability,* etc., pp. 373, 374), because they cannot be traced to the employment with respect to which the claim is made. But while we approve the principles embodied in these prayers, we cannot approve the form in which they are expressed. The third prayer segregates from all the facts in the case the single fact that Bailey may have temporarily departed from the services of his employer for the purpose of assisting some one whom he thought to be on fire, and makes the right of the appellee to compensation turn on that fact. It is true that if Bailey had "temporarily" left his employer's service when he was injured, appellee would not have been entitled to compensation. But in view of the testimony in the case, and of the fact that it turned on whether the act of Bailey in going back to the fire was a "temporary" departure from his employment, in stressing the word "temporarily" without giving the jury any rule or guide to assist them in determining whether under the circumstances Bailey's act was such a departure, we think the prayer was more likely to confuse the jury than to aid them, and it was properly refused. The fourth prayer is also confusing and likely to mislead. It contains two independent propositions. One, that "unless the jury further find that the risk which caused the injury was so incidental to the specific duties of said Bailey's employment that it was an attribute of or special or peculiar to that employment, and that the said risk was connected with the work of the deceased Bailey and flowed therefrom as a natural consequence, the verdict of the jury shall be in favor of the employer and of the insurer, and the answer to the first issue submitted shall be 'No,' " and the other that "even if the jury find that the deceased Bailey's employment placed him at the particular spot where he was injured, this of itself is not a sufficient basis for an

award of compensation in favor of the claimant." The proposition first stated is sound, *McNicol's Case, supra,* but the second is incomplete, and misleading upon the facts of this case. For upon the facts, if Bailey's "employment" placed him at the particular spot where he was injured, it is not apparent why an award should not have been made in favor of the appellee. We find no error therefore in the refusal of these two prayers.

The fifth prayer was also properly refused. It was objectionable not only for the reasons stated in dealing with the refusal of appellants' third issue, but because there is no evidence in the case legally sufficient to show that the risk, which caused the injuries referred to in the prayer upon which the claim in this case rests, was common to the general public. If, as the prayer predicates, Bailey started to enter the garage "in the course of his employment," and while so doing was deluged with burning gasoline which caused the injuries, they necessarily arose "out of" his employment. And as there is nothing in the case to indicate that the "general public" were his co-employees, or under any duty with respect to the fire, they were naturally not subjected to the risks to which the course of his employment, which placed him in the path of danger, exposed him.

The appellants in their second prayer asked to have the jury instructed that the appellee was not entitled to a verdict unless they found that the injury arose out of and in the course of the employment,, and "that in order for the injury to arise out of the employment there must be a causal connection between the conditions under which the work is required to be performed and the resulting injury, and that in order for the injury to be said to arise in the course of the employment the injury must be received while the workman is doing the duty which he is employed to perform; that, if the jury find either that the injury did not arise out of the employment or that it did not arise in the course of the employment, the verdict must be for the em-

ployer and insurer, and the answer to the first issue submitted shall be 'No.' "

Assuming, without deciding, that the prayer is accurate as an abstract statement of law, it does not go far enough, and because of its omissions was likely to mislead the jury, and was properly refused. It has been held that "in order for the injury to arise out of" the employment, there must be a causal connection between the conditions under which the work was required to be done and the injury, but in order to make that statement clear to persons untrained in the law, the prayer should have explained, as the Court did in *Re McNichols supra,* where the expression is used, what was meant by "conditions." For the prayer appears to limit the cases in which injuries can "arise out of" an employment to those in which there is a causal connection between the "conditions" under which the work is required to be done and the injury. If "conditions" as used in the prayer is intended to include the work or employment itself, in which the injury occurs, the prayer correctly states the law, but, if it does not, it is bad, for injuries received from the doing of the work itself may be compensable as well as those occasioned by the conditions under which it is done. The use of the word "conditions" in the prayer, without some explanation of why it was used, tended rather to obscure than to expose the meaning of the clear plain words of the statute, and was likely to mislead, and the prayer was for that reason properly refused.

Finding no reversible error in the rulings involved in the exceptions presented by the record, the judgment appealed from will be affirmed.

*Judgment affirmed with costs.*