IRENE HILL *v.* LIBERTY MOTOR & ENGINEERING CORPORATION, ET AL.

[No. 42, October Term, 1945.]

*Decided January 18, 1946.*

*Dissenting opinion filed January 24, 1946.*

Motion for reargument denied May 15, 1946.

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Maurice J. Pressman,* and *Milton S. Goldbloom* appeared on the brief for the appellant.

*William S. Wilson, Jr., Paul G. Ballard,* and *Wilson & Ballard,* appeared on the brief for the appellees.

COLLINS, J., delivered the opinion of the Court.

John Hill, an employee of Liberty Motor and Engineering Corporation, one of the appellees, on February 5, 1944, arrived at his place of employment at about 7:30 A. M. He punched the time clock and then went into a room furnished by the employer to the employees for changing their clothes preparatory to work and upon leaving work. Work did not start until 8:00 A. M.

Hill had something which appeared in the newspaper, Afro-American, which he wanted to show to Sylvester Lowe. Lowe told him that he did not want to see it. Hill kept on and one word brought on another and Hill called Lowe a vile name. Finally Hill, who weighed about 175 pounds, jumped up and grabbed Lowe, who weighed about 155 pounds, and threw him down on the floor on his back. Lowe and all the other witnesses say that both men were friendly and laughing at each other during the whole scuffle. After holding Lowe on the floor for a short time, Hill attempted to disengage himself and to get up on his feet. As he was rising his foot slipped and he fell against a radiator and struck his head. As a result his head was bleeding. He was promptly sent to the hospital in an ambulance and died the following day as a result of this injury. There is testimony which is not contradicted that Hill had been warned against horse-play and that all the employees, including Hill, had been given an instruction book at the time of their employment, which contained instructions from the employer not to engage in horse-play, which subjected the transgressor to discharge.

His wife, Irene Hill, claimant and appellant, on her own behalf and on behalf of her two minor children, filed a claim with the State Industrial Accident Commission against the employer and insurer. The Commission found after a hearing that the accident causing the injury and death of John Hill did not arise out of and in the course of his employment and that the deceased was guilty of horse-play. From an order disallowing the claim, an appeal was taken to the Baltimore City Court where the case was tried before a jury. By reason of the fact that the jury was unable to agree upon their verdict, they were discharged.

By agreement of the parties at the retrial of the case tried before a judge, other than the one who presided at the former trial, without a jury, a stipulation was entered into by counsel that no further testimony would be introduced at the second trial but the issues were to be decided upon the record and testimony presented at the first trial. The same exceptions were reserved to the rulings on the testimony. According to the record before this Court, no prayers were offered at the second trial. The trial judge at the rehearing without a jury affirmed the decision of the State Industrial Accident Commission in that the injury and death of John Hill did not arise out of and in the course of his employment. Judgment was entered in favor of the employer and insurer for costs and, from that judgment, the appellant appeals here. The case comes to this Court under Rule 9, Trial by the Court. As none of the appellant's exceptions to the rulings on evidence were discussed in the brief or argument, they will be treated as abandoned.

The question for our decision is whether the trial judge was clearly erroneous in denying compensation to the wife of a deceased employee who died as a result of horse-play in which he engaged and which he initiated, after he had been notified by rules of the employer corporation and personally by his superior not to engage in horse-play. All of which occurred half an hour before

work in a room furnished by the employer to change clothing, when the deceased was not changing his clothing and where he had never changed his clothes. To appellant's argument, that the friendly tussle had terminated and the horse-play had ended when Hill slipped while attempting to disengage himself and get on his feet, we see no force.

Appellants have referred us to many out of state cases where compensation was allowed, most of which are distinguishable from the case at bar. In *Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 P. 818, the deceased was injured in a fall while putting on his overalls in the dressing room provided by the employer, from which injuries he died. In *Cassell v. U. S. Fidelity & Guarantee Co.*, 115 Tex. 371, 283 S. W. 127, the injured did not participate in the horse-play by which he was injured. In *Chambers v. Union Oil Co.*, 199 N. C. 28, 153 S. E. 594, injury was caused by the act of a fellow employee, while delivering oil, in throwing a pistol into the truck. In *East Ohio Gas Co. v. Coe*, 42 Ohio App. 334, 182 N. E. 123, the injured was at his work, was actually performing his duties. In *General Accident Co. v. Crowell*, 76 F. 2d 341, the finding of a deputy commissioner that compensation is due was final when supported by evidence. The evidence was in "hopeless conflict." The Court found that there was sufficient evidence to support the finding of the commissioner. In *Twin Peaks Canning Co., et al., v. Industrial Comm. of Utah,* 57 Utah 589, 196 P. 853, at page 856, the Court there said: "In order to obtain compensation under our statute, it is only necessary to show that the accident occurred 'in the course of the employment,' and not that it arose 'out of the employment.' "

Appellees also cite many out of state cases. In *Porter v. City of New Haven,* 105 Conn. 394, 135 A. 293, 294, the Court in denying compensation where a fireman, while standing in the doorway of the engine house, was pushed in a spirit of fun by a substitute fireman not on duty at the time, and died two years later, held that,

although the injury arose "in the course of the employment," it did not arise "out of an employment." In *Hulley v. Moosbrugger,* 88 N. J. Law, 161, 95 A. 1007, compensation was denied where the deceased, while working, in dodging a friendly blow of a fellow workman, fell on a concrete floor and was killed. In *Washburn's Case,* 123 Me. 402, 123 A. 180, compensation was denied for injuries sustained by an employee by reason of a harmful prank of a co-employee in throwing him down. In *Payne v. Industrial Commission,* 295 Ill. 388, 129 N. E. 122, compensation was denied where boys, while using a machine operated by compressed air, and while playing with the air hose unknown to employer, shot air into the body of one of them as he turned to start his work.

In *Lee's Case,* 240 Mass. 473, 134 N. E. 268, compensation was denied where an employee, while in the course of his employment, as a result of horse-play was pushed out of a doorway, the Court finding that the injury thereby sustained did not arise out of the employment. In *Tarpper v. Weston-Mott Co.,* 200 Mich. 275, 166 N. W. 857, 858, one servant at work as riveter's helper was seized by another who held an air hose to his rectum while a third turned on the air, injuring him. The Court there found that the injury arose "in the course of" but not "out of his employment." In *Frost v. H. H. Franklin Mfg. Co.,* 204 App. Div. 700, 198 N. Y. S. 521, the Court held that where a claimant who had charge of employer's tool room, while handing out wire to a workman, playfully pulled down the peak of workman's cap, and when the workman lifted the cap from his eyes, a file, which he held in his hand, flew from its handle and put out claimant's eye, the injury was not an accident "arising out of employment."

*Stark v. State Industrial Accident Commission,* 103 Or. 80, 204 P. 151, insofar as it supports the appellants' contentions, we are unable to reconcile with the weight of authority or to follow. The Court in that case found, in allowing compensation, that it was the custom of the

employees, while engaged in their work to use the air hose and apparatus, supplied by the company for the performance of the necessary work, in scuffling, horse-play, and general recreation during working hours. In the case at bar the deceased had not started his work for that day. He had previously been handed rules of the company which made horse-play a cause for discharge and he had been specifically warned once before not to engage in horse-play.

In the case of *Leonbruno v. Champlain Silk Mills,* 229 N. Y. 470, 128 N. E. 711, claimant, while engaged in the performance of his duties in employer's factory, was struck by an apple which one of his fellow servants was throwing in sport at another. The claimant did not participate in the horse-play and had no knowledge of it until injured. In that case, in allowing compensation, Judge Cardozo said: "This case is not within the principle of *Matter of De Filippis v. Falkenberg,* 219 N. Y. 581, 114 N. E. 1064, and *Matter of Stillwagon v. Callan Brothers,* 224 N. Y. 714, 121 N. E. 893, where the claimant, joining in the horseplay, had stepped aside from the employment."

Where an elevator operator left his post to scuffle with a fellow employee and sustained injuries, it was held in the *Case of Moore,* 225 Mass. 258, 114 N. E. 204, that the injury did not arise "out of his employment."

In the case of *Fazio v. Cardillo, et al.,* 71 App. D. C. 264, 109 F. 2d 835 (decided January 8, 1940), appellant was employed by the Mayflower Hotel Corporation in Washington, D. C., as a cafeteria man. His duties were to serve food to employees of the hotel in a cafeteria provided for that purpose. Nearby was a lavatory for the use of white employees. About noon of the date in question the claimant went into the lavatory and while there was injured in a fight with Smith, a co-employee, a colored boy whose duty it was to keep the lavatory clean. The deputy commissioner found that the claimant did not sustain an injury arising out of the employ-

ment and denied compensation. His decision was affirmed.

The Federal statute in part is similar to the Maryland statute, Art. 101, Sec. 14. That section in Maryland provides in part: "Every employer * * * shall pay * * * compensation * * * for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, except where the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty. * * *."

The case of *Hartford Accident & Indemnity Co. v. Cardillo, et al.*, 72 App. D. C. 52, 112 F. 2d 11, was decided March 11, 1940. The claimant, Bridges, while employed as a helper in employer's produce warehouse, engaged in loading vegetables on employer's truck, sustained personal injury when a co-worker struck him causing a laceration of the right eye brow and a fracture of the right maxilla. The work of the claimant was supervised by one Roy Downey. In directing the claimant in the performance of his duties, Downey addressed the claimant as "Shorty." The claimant resented being called Shorty and when Downey persisted in so addressing him, Bridges called Downey a vile name, whereupon Downey struck the claimant a blow on the right side of the face with his fist, inflicting the injury above described. The claimant did not strike or attempt to strike his superior, Downey, and Downey was the aggressor in the assault. Judge Rutledge, in the opinion in that case, goes into all phases of Workmen's Compensation cases arising from horse-play. He points out that when men are brought together by work frictions are caused, occasions for fun making and emotional flare-ups are created and these expressions of human nature are incidents inseparable from working together. He says that in the horse-play and assault cases "confusion and conflict * * * reign."

112 F. 2d at pages 15, 16. We do not think the case at bar, on its facts, is materially affected by any such "confusion and conflict."

The Court in that case allowed compensation for the reason that it was clear that the entire sequence of incidents occurred *not only while the claimant and his assailant were at work but as a natural and normal product of work together.* He distinguishes that case from *Fazio v. Cardillo, supra,* by the fact that in the Fazio case the claimant there was the aggressor in the physical assault and also by the fact that the deputy commissioner, who found in the case under discussion, that the injury rose out of the employment, found in the Fazio case, that it did not arise out of the employment.

In the case at bar the deceased "stepped aside from the employment," not merely by "joining in the horse-play," but by starting it, not while he was at work, but a half hour before work when he was doing nothing pertaining to the work. Also in the case at bar the State Industrial Accident Commission found that the injury did not rise out of the employment. The injury here did not occur while the deceased was at work and was not a natural and normal product of working together. This horse-play might well have been causd by any association of Hill with Lowe.

In a number of recent cases compensation has been allowed to workmen who did not initiate or participate in horse-play that caused their injuries. *Anderson v. Hotel Cataract,* S. D., 17 N. W. 2d 913, *Gates Rubber Co. v. Industrial Commission,* 112 Colo. 480, 150 P. 2d 301, *Pacific Employers Ins. Co. v. Industrial Accident Commission,* Cal., 158 P. 2d 9, including one who "participated in a slight degree" in horse-play but did not initiate or participate in causing his own injuries, *Maltais v. Equitable Life Assurance Society of U. S.,* 93 N. H. 237, 40 A. 2d 837, but has been denied to workmen who initiated or participated in the horse-play that caused their injuries. *Barrentine v. Dierks Lumber & Coal Co.,* 207 Ark. 527,

181 S. W. 2d 485, *Stockham Pipe Fittings Co. v. Williams,* 245 Ala. 570, 18 So. 2d 93.

In *Scholtzhauer v. C. & L. Lunch Co.,* 233 N. Y. 12, 134, N. E. 701, compensation was denied where a waitress engaged in her work was shot and killed by a co-employee because she had declined an invitation to go out with him. In holding that, while the murder did arise during the "course of the employment," it "did not arise out of, the employment," the Court said in that case, 134 N. E. at page 702: "It (the injury) must have been received while the employee was doing the work for which he was employed, and in addition thereto such injury must be a natural incident to the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work. * * * The only suggestion that the employment had any bearing on the injury was that it brought the two persons together. * * * The fact that the murder took place on the employer's premises was a mere incident. It might equally well have happened on the sidewalk in front of the building or while the daughter was on her way home, or at any other place where Arthurs had chanced to meet her."

Likewise in the case at bar Hill might have shown Lowe the article in the Afro-American and kidded and grabbed him on the street or any other place other than the employer's premises. The only bearing on the injury was that the work brought the two persons together, which might well have occurred at any other place.

The words, borrowed from the English Compensation Act, "out of," refer to the cause or origin of the accident, while "in the course of" refer to the time, place, and circumstances under which it occurs. Long before the passage of the Maryland Act the Court of Appeals had held that a non-participating victim of horse-play is not entitled to compensation. *Armitage v. Lancashire etc. R. Co.* (1902), 2 K. B. 178; *Fitzgerald v. Clarke & Son,* (1908) 2 K. B. 796. Later the House of Lords held that

it is a question of fact in each case whether the horse-play is a risk of the employment of the non-participating victim. *Clayton v. Hardware Colliery Co. Ltd.* (1915), 85 L. J. (K. B.) 292, *Calton v. Samuel Fox & Co., Ltd.* (C. A. 1938), 158 L. T. 402. It seems never to have been contended that an employee who himself "steps aside from the employment" and initiates horse-play can recover compensation for the consequences.

Turning to the Maryland law it was pointed out by this Court in the case of *Baltimore Dry Dock Co. v. Webster,* 139 Md. 616, 116 A. 842, in order for a claimant to collect compensation, it is necessary not only that it be shown that death resulted from an injury sustained by the employee in the course of his employment, but also that it arose out of the employment. At page 626 of 139 Md., at page 846 of 116 A. it was said: "After a very careful examination of many of the cases in which the words 'arising out of and in the course of the employment' have been construed and passed upon, we may add to what has been said that they, as precedents, furnish little aid or assistance in determining the meaning and effects of those words as used in the statute. And after all that has been said, we too are of the opinion that their meaning and effect must be largely determined by considering them in connection with the facts of each particular case." In the case of *Baltimore Towage Etc. Co. v. Shenton,* 175 Md. 30, 199 A. 806, it was held that death would not have resulted had it not been for the employment. In the case at bar the death could very well have occurred under the same circumstances had there been no employment and the men had met at any place other than employer's premises.

It is pertinent to observe in the instant case that this accident occurred possibly one-half hour before the work of the claimant began. It was stated by this Court in the case of *Harrison v. Central Construction Co.,* 135 Md. 170 at page 177, 108 A. 874, to the question whether an injury arose out of and in the course of the employment,

that an employee, while on his way to work, is not in the course of his employment.

In the case at bar the employment did not require the deceased to be at the place where the injury occurred, a place provided for changing clothes and, according to the testimony before us, Hill never changed his clothes either before or after work. Neither did the work in any way cause the horse-play as in many of the cases cited, such as air hose cases. The horse-play in the case at bar is the kind which could very well have occurred at any place in no way connected with the employment. *Atlantic Refining Co. v. Forrester,* 180 Md. 517, 527, 25 A. 2d 667. According to the evidence before us, the injury was not caused by the act of a fellow employee, but by the act of the injured himself. *Boteler v. Gardiner-Buick Co.,* 164 Md. 478, 165 A. 611.

This Court, in the case of *Schemmel v. T. B. Gatch and Sons, etc., Co.,* 164 Md. 671, at page 683, 166 A. 39, 43, approved the following statement in *McNicol's Case,* 215 Mass. 497, 102 N. E. 697, that an injury "arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. *But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.* (Italics supplied here.) The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation to master and servant. It need not have been foreseen or

expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *Slacum v. Jolley,* 153 Md. 343, 351, 138 A. 244; *Owners' Realty Co. v. Bailey,* 153 Md. 274, 138 A. 235; *Thistle Mills v. Sparks,* 137 Md. 117, 111 A. 769; *Baltimore Dry Docks v. Webster,* 139 Md. at pages 627, 629, 116 A. 842, *supra.*

The case now before this Court could well come within the exclusion above set forth as the injury cannot be fairly traced to the employment as a contributing proximate cause and which came from a hazard to which the deceased would have been equally exposed apart from employment. The only ground on which compensation could be allowed here is because the work caused the association of these two men. That alone under the authorities is not sufficient.

The claimant in this case is favored under Workmen's Compensation Act by the provision of Art. 101, Sec. 79, that it shall be presumed in the absence of substantial evidence to the contrary, "(c) that the injury was not occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another." On the other hand, she is faced with the provision of Code, Article 101, Section 70, that the decision of the State Industrial Accident Commission shall be presumed as *prima facie* correct, and that the burden of proof is here upon the claimant. *Atlantic Refining Co. v. Forrester, supra,* 180 Md. at page 523, 25 A. 2d 667.

For the reasons herein given and under the authorities herein cited we are not prepared to say that the claimant has overcome the burden of proof cast upon her or that the judgment of the Trial Court was clearly erroneous and therefore the judgment will be affirmed.

*Judgment affirmed with costs.*

HENDERSON, J., filed the following dissenting opinion in which MARBURY, C. J., concurred:

The question presented in this case is an unmixed question of law, and there is no occasion to discuss the effect of the various presumptions. The question is whether the death was caused by an accident arising out of and in the course of employment. The facts are undisputed that Hill had reported for work and punched the time-clock, and was in a room furnished by the employer for the convenience of employees to change their clothes preparatory to work. If work were to start promptly at 8 A. M., it was necessary for employees to enter the premises and make necessary preparations beforehand, and in that preliminary period Hill was within the course of his employment. All of the authorities agree upon this point.

In *Southern Can Co. v. Sachs,* 149 Md. 562, 131 A. 760, this Court held that an employee was in the course of his employment where the injury was caused by falling on a stairway after the employee had left his post to visit a toilet on another floor. In *Baltimore Car Foundry v. Ruzicka,* 132 Md. 491, 496, 104 A. 167, 4 A. L. R. 113, the injury occurred after working hours, when the employee, taking a short cut to leave the premises, attempted to pass between two cars standing on a railway siding. See also *Boteler v. Gardiner-Buick Co.,* 164 Md. 478, 481, 165 A. 611; *1 Honnold, Workmen's Compensation,* p. 368; *Broderick v. George Colon & Co.,* 255 N. Y. 609, 175 N. E. 334; *Latter's case,* 238 Mass. 326, 130 N. E. 637. In *Cudahy Packing Co. of Nebraska v. Parramore,* 263 U. S. 418, 426, 68 L. Ed. 366, the Supreme Court said: "We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose. See *Gane v. Norton Hill Colliery Co.* [1909], 2 K. B. 539, 544." See also *Bohlen "A problem in the drafting of Workmen's Compensation Acts,"* 25 Harv. L. R. 401.

To be compensable, the risk need not be directly related to the type of work performed; it is sufficient if the duties of the employee require him to be in the place where the injury occurs, and the injury is attributable to the working environment. Thus, in *Krell v. Maryland Drydock Co.,* 184 Md. 428, 41 A. 2d 502, 509, it was held that an unexplained disappearance from the enclosed premises was enough to support an inference that the employee fell overboard and was drowned. The fact that the place of employment was on the waterfront was sufficient to make the risk of drowning a risk of the employment. In *Baltimore Towage Co. v. Shenton,* 175 Md. 30, 199 A. 806, an unexplained fall from a pier was held to be compensable. In *Townsend Grace Co. v. Ackerman,* 158 Md. 34, 148 A. 122, an injury due to slipping upon a wet floor was held to be sustained in the course of employment. See also *Caccamo's Case,* 316 Mass. 358, 55 N. E. 2d 614. In the case at bar, the immediate cause of the injury was slipping on the floor of a room provided by the employer for the use of employees. If there were nothing else in the case, it would seem to be perfectly clear that the injury would be compensable.

It is contended, however, that the injury did not arise out of the employment because it resulted from "horseplay" between the decedent and a fellow-employee. It is said that the employee "stepped aside" from his employment; the argument seems to be that since the employee contributed to his injury, the proximate cause was not the working environment but the employee's own fault. The short answer to this contention is found in the statute itself. Section 14, Art. 101, of the Code, 1939, provides compensation for "accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, except where the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of

the injured employee while on duty." Section 58 denies recovery for any injury "caused by self-inflected injury, the wilful misconduct, or where the injury or death resulted solely from the intoxication of the injured employee."

If the injury is compensable "without regard to fault as a cause of such injury," it would seem to be wholly immaterial that the employee contributed to the injury by originating or participating in the "horse-play" that led to the accident. Any other view would distort the plain meaning of the statute, and add a further exception to those created by the legislature. To that extent, it would defeat the avowed purpose of the law to place the burden of loss arising from accidents in industry upon the industry, without regard to fault. *Solvuca v. Ryan,* 131 Md. 265, 101 A. 710.

The point raised is novel in this State. The authorities in other states are not in agreement, but there is a definite tendency to recognize the risk of injury from "horse-play" as an inherent risk of employment, without the necessity of a finding of fact that such a risk is peculiar to the particular employment, as required by the English authorities. See notes 15 Aust. L. J. 149; 77 Ir. L. T. 293. In the leading case of *Leebrunno v. Champlain Silk Mills,* 229 N. Y. 470, 472, 128 N. E. 711, Cardozo, J., expressed what is now the prevailing American view, as follows: "The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about them. * * * Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service." This same principle was recognized in *Hartford Acc. & Ind. Co. v. Cardillo,* 72 App. D. C. 52, 112 F. 2d 11, and *Pacific Employees Ins. Co. v. Industrial Acc. Comm., Cal. Sup.,* 1945, 158 P. 2d 9, 14 (overruling earlier cases.)

It is true that in those cases the employee was not a participant in, or at least not the aggressor in, the "horse-

play." But the fact of participation or aggression would not seem to afford the basis for a valid distinction, for the distinction can only be predicated upon the theory that the injured workman's fault has intervened so as to break the chain of causation. That is a principle of tort law which has no just application to the statutory law of Workmen's Compensation. There is respectable authority for the proposition that such a distinction is untenable, although a majority of the courts hold to the contrary. *Stark v. State Industrial Acc. Comm.*, 1922, 103 Or. 80, 204 P. 151; *Brown v. Vacuum Oil Co.*, 1930, 171 La. 707, 132 So. 117; *East Ohio Gas Co. v. Coe*, 1932, 42 Ohio App. 334, 182 N. E. 123; *Geltman v. Reliable Linen & Supply Co.*, 1942, 128 N. J. L. 443, 25 A. 2d 894; *Maltais v. Equitable Life Assurance Soc.*, 1944, 93 N. H. 237, 40 A. 2d 837. Compare *Hartford Acc. & Ind. Co. v. Cardillo, supra,* 112 F. 2d at page 16 note 17. See also note 46 Harv. L. R. 166.

In the opinion of the Court in the case at bar stress is laid upon the fact that a rule of the employer forbade "horse-play," under penalty of discharge. This Court has held that a mere violation of rules is not enough to bar recovery on the ground of misconduct. *Red Star Coaches, Inc., v. Chatham,* 163 Md. 412, 417, 163 A. 886, 888. "There must be something more than thoughtlessness, heedlessness, or inadvertence in it. There must be, at least, a wilful breach of the rule or order." In that case the employee died from the effects of monoxide gas while sleeping in an automobile standing in a closed garage with the motor running. Rules of the company forbade (a) running motors in the closed garage and (b) sleeping in cars. Nevertheless recovery was allowed. In the case at bar it seems clear that the decedent had no intention of injuring himself or anyone else, when he engaged in the friendly scuffle. Nor was there anything inherently dangerous in his action. The rule was quite obviously addressed to the danger of playing with tools and machinery, rather than the danger of slipping, which

was the immediate cause of the injury. If Hill was guilty of misconduct it was not wilful, but inadvertent, under the undisputed facts of this case.

I think the injury is compensable and the judgment of the trial court should be reversed. I am authorized to say that Chief Judge Marbury concurs in this view.

On motion for Reargument, the following opinion was filed *per curiam*:

By motion for reargument, the appellant earnestly disputes the correctness of our decision on the basic question in this case and also raises a number of subsidiary questions, of law, fact or evidence, directed to particular features of the opinion.

We adhere to our decision that an employee who "steps aside from his employment" to initiate and participate in horse-play is not entitled to compensation for the consequences of his departure. Such injuries do not "arise out of his employment." The necessary causal connection between the employment and the injury is lacking. The mere fact that the work caused his association with the other man is not sufficient.

Subsidiary questions relate to such matters as the fact that the accident occurred before work was actually begun, the nature and extent of warnings to employees against horse-play and the question whether the deceased had changed or was about to change his clothes. We find it unnecessary to discuss these subsidiary questions for the reason that what was said about these details was not a basis of decision, but was incidental to the statement of facts. We do not regard these details as an essential part of the Court's reasoning or conclusion.

Motion denied.