# COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY, ET AL. *v.* COLE

[No. 120, September Term, 1964.]

*Decided February 2, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY and BARNES, JJ., and DIGGES, C. J., of the Seventh Ju-
dicial Circuit, specially assigned.

*John S. Hebb, III,* with whom was *Robert L. Karwacki* on
the brief, for appellants.

*Robert P. Conrad,* with whom was *John W. Pfeifer* on the
brief, for appellee.

DIGGES, J., by special assignment, delivered the opinion of
the Court.

The County Commissioners of Anne Arundel County, em-
ployer, and its workmen's compensation insurer, appeal from a
judgment of the Circuit Court for Anne Arundel County af-
firming an award made by the Workmen's Compensation Com-

mission (the Commission) in favor of the appellee, Donald Reese Cole. The case was heard by the court, sitting without a jury, partly on the evidence presented before the Commission, and partly on testimony taken before the Court. The question is whether or not there is legally sufficient evidence to show that the employee sustained an accidental injury arising out of and in the course of his employment. Both the Commission and the lower court concluded that the injury sustained by the appellee arose out of and in the course of his employment.

The facts may be summarized as follows: On March 13, 1963, the appellee was one of three full-time enginemen employed by the Herald Harbor Volunteer Fire Department, but paid by the County Commissioners of Anne Arundel County. On that date, the appellee was not scheduled for regular duty because of a system whereby each of the three enginemen was on duty for 24 hours and off 48 hours. His duties, however, as a paid engineman required, in addition to the operation of the fire apparatus at fires, that he help maintain and care for the department's equipment and building. In connection with his building maintenance duties, appellee had been assigned the task of painting the sleeping quarters used by the paid enginemen. Appellee had been working on this project for several weeks. On March 13, normally his day off, at the request of the department chief, he arrived at the fire department building at about 1:40 p.m., intending to continue the painting of the quarters so that the project would be completed in time for the membership meeting that evening. Upon entering the building the appellee met Darr, the paid engineman on duty that day, and Emory Merle Elswick, the unpaid fire chief. Elswick was regularly employed as a police officer with the Anne Arundel County Police Department. As was his custom, on that date he had stopped at the fire building to obtain coffee, and pick up any mail addressed to him as chief of the fire company. As soon as the appellee entered the building he became engaged in a conversation with Darr and Chief (Officer) Elswick with regard to a schedule redefining the lines of the territory for each of the Anne Arundel County fire departments. This letter or schedule had been mailed to Officer Elswick as chief of the Herald Harbor Department, and was received by him that day.

The conversation among the three men concerned the new schedule and each man's disappointment with it. Appellee, after reading the new schedule, attempted to place it in Chief Elswick's inside blouse pocket, while remarking that the chief ought to do something about it. He next turned and started to walk away when Chief (Officer) Elswick's police pistol inadvertently fired, and appellee was struck in his hip by the bullet.

Appellants contend that both the Commission and the trial court erred in holding that the injury was compensable. They contend that a correct decision on that point would compel the conclusion that appellee did not meet the requirements of Code (1957, 1964 Repl. Vol.), Art. 101, Sec. 15, which provides that the claimant sustain an accidental injury arising out of and in the course of his employment, in order to receive compensation. The meaning of the words "arising out of" and "in the course of" employment has been defined by this Court. See *Miller v. Coles,* 232 Md. 522, 194 A. 2d 614, and cases therein cited; *Scherr v. Miller,* 229 Md. 538, 184 A. 2d 916, and cases therein cited.

It is generally held that one who instigates or participates in horseplay is usually not entitled to compensation. *Hill v. Liberty Motors,* 185 Md. 596, 45 A. 2d 467. However, minor acts of horseplay do not automatically constitute "departure" from employment if the acts are found to be insubstantial. "So, whether initiation of [or participation in] horseplay is a deviation from course of employment would depend on (1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay." 1 Larson, *Workmen's Compensation Law,* sec. 23, p. 342. Life for the working man would indeed be grim if *all* acts of "frivolity," "skylarking," "fooling," or "horseplay" are prohibited, or, if engaged in, preclude compensation, as a matter of law.

Thus, all acts instigated or participated in by a claimant,

which may be described by any of the above or similar phrases, do not automatically bar compensation being received. If reasonable minds could not disagree about the conclusion resulting from a particular set of undisputed or conceded facts, the question becomes one of law to be decided by the court. If reasonable persons could disagree as to what the facts are, or the inferences and conclusions to be drawn from undisputed facts, the question is one for the trier of the facts.

The decision of the Commission is prima facie correct, Code (1957, 1964 Repl. Vol.), Art. 101, Sec. 56(c) ; *Stewart & Co. v. Howell,* 136 Md. 423, 110 A. 899; and if there is any competent, material evidence to support the findings below, the weight and value of such evidence must be left to the trier of facts, as it is not our function to determine the comparative weight of conflicting evidence. *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 158 A. 2d 621; *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 197, 117 A. 2d 577.

We believe that a careful review of the evidence, in the light of Art. 101, Sec. 56(c) and Maryland Rule 886 a, admits of the conclusions reached by both the Commission and the court. All of the evidence is to the effect that there was no animosity between appellee and Chief Elswick. The appellee testified that after the discussion about the contents of the letter affecting the fire department, while sticking the letter in the chief's pocket, he said, "Here, Chief, you'd better go up there and get that straightened out." He then turned to go to another part of the building when the gun was fired. Appellee does say that he may have brushed the letter across the chief's face in a playful manner. It is true that the chief gives a slightly different version of the occurrence, but this creates an issue of credibility, and is one for decision by the trier of facts. *Bethlehem Steel Co. v. Jones, supra.* In this case we believe that the act of playfully brushing a letter across the chief's face, and then, while placing it in his pocket, suggesting that the chief take some action in regard to the contents of the letter, constitutes facts on which reasonable persons may disagree as to whether the degree of departure is sufficient to justify a legal conclusion that he did not meet the requirements of Art. 101, Sec. 15, referred to above. In other words, we do not feel that there has been a

showing of a sufficient departure from appellee's employment which will permit our ruling as a matter of law that the accident did not arise out of or in the course of the employment.

Appellants place great reliance in support of their contention on the case of *Hill v. Liberty Motors, supra.* On the facts of that case this Court held that the lower court was not clearly wrong in denying compensation to the family of the decedent who died as the result of a rather violent scuffle which occurred during an argument over an article that appeared in a newspaper. Neither the newspaper article nor the resulting scuffle had anything to do with the employment of the participants in the scuffle; it "could very well have occurred at any place" (*Hill,* p. 607). In the present case, not only was there no animosity between the parties, but the physical contact, as well as the episode itself prior to the pistol firing, was of a trivial nature. In addition, the discussion between the appellee and the fire chief immediately prior to and at the time of the injury concerned the business of the employer and the occupation of the employee. Whether the rather extreme factual situation in *Hill* would have permitted a ruling as a matter of law (no such ruling was made) that the accident did not arise out of or in the course of employment, is unnecessary to consider; for the facts in the case now before us differ significantly, in the important respects enumerated above, from those that existed in *Hill.*

We conclude that there was sufficient evidence to support the findings of both the Commission and the lower court under the standards spelled out above, that the accident arose out of and in the course of appellee's employment.

*Judgment affirmed, with costs.*